## IN THE

# SUPREME COURT

## OF THE

# STATE OF IDAHO.

(September 18, 1908.)

## JOHN L. GERBER, Respondent, v. NAMPA & MERIDIAN IRRIGATION DISTRICT, Appellant.

[100 Pac. 80.]

WATER RIGHTS—IRRIGATION DISTRICTS—MANDAMUS—APPORTIONMENT—DISTRIBUTED TO LAND—PRIOR USERS—CAPACITY OF CANAL—CONSTITUTIONAL LAW—WATER FOR SALE, RENTAL OR DISTRIBUTION—WASTE WATER—DRAIN DITCH—DISTRIBUTING DITCH—PRORATING—ILLEGAL CONTRACTS—ALLEGATION AND PROOF OF CAPACITY OF CANAL—RIGHTS OF PRIOR USERS—LIVE WATER—OLD WATER—NEW WATER—FLOOD WATER—ESTOPPEL.

1. Under the provisions of sec. 4, art. 15 of the constitution of Idaho, providing for the sale, rental or distribution of water, and also providing that such sale, rental or distribution when once made shall be deemed an exclusive dedication to such use, it was not intended to compel a canal company, that had already sufficient customers to use all of the water the capacity of its canal would carry, to perpetually furnish water to anyone to whom it had furnished water at times when its regular customers did not require it.

2. Under the constitution and laws of this state, a person cannot acquire a perpetual water right beyond the carrying capacity of the canal.

3. The aggregate rights of the users of water cannot exceed the capacity of the canal, and any temporary deliveries of water, at times when the prior users are not demanding the full amount of water to which they are entitled, cannot be turned into a perpetual water right by the person to whom such deliveries are made.

4. Under the provisions of our statute (see Sess. Laws 1899, p. 380, sec. 19), a water company is prohibited from contracting to deliver more water than its canal will carry.

5. In this class of cases, it is necessary for the plaintiff to aver and prove that the canal company has sufficient water to supply him with the desired amount, and that its canal has sufficient capacity to carry it, over and above the amount of water that prior users are entitled to receive.

6. *Held*, that the averments of the answer are sufficient to show that all of the water carried by the Ridenbaugh canal had been applied to a beneficial use by users prior to the application of the respondent.

7. *Held*, that the court erred in finding that there was a surplus of water carried by the canal over and above a sufficient amount to supply prior applicants and users.

8. Under the apportionment of benefits, by reason of the purchase of said canal system, to the lands under it, the benefits were classified under two heads, one of "old water," and the other of "new water." The term "old water" refers to existing water rights at the time of the purchase of the canal, and "new water" refers to rights yet to be acquired by the enlargement of the canal, and no benefits under the head of "old water" were apportioned to respondent's land, and it appears that the canal has not been enlarged so as to acquire any "new water," and until such enlargement occurs or it is made to appear that the canal company has water sufficient to supply the demands of respondent without interfering with the rights of prior users, he cannot acquire a perpetual water right by the temporary use of water from said canal at times when prior users are not demanding the full amount of water to which they are entitled.

9. *Held*, under the facts of this case, that the agents and officers of the appellant cannot by their acts estop the appellant from putting in issue the fact that the canal would not carry more water than prior users were entitled to receive.

(Syllabus by the court.)

APPEAL from the District Court of Third Judicial District for Ada County. Honorable Ed. L. Bryan, Judge of the Seventh Judicial District, Presiding.

Original proceedings for writ of mandate to compel the appellant to deliver certain water to respondent. Judgment for respondent. *Reversed.*

Hugh E. McElroy, for Appellant.

The delivery of water cannot be required by *mandamus* unless the plaintiff clearly shows that the defendant has the water to make the delivery.

Both our constitution and statutes require that the canal owner shall respect the rights of prior users of water. (Sec. 4, art. 15, Const.; sec. 2600, Civil Code, 1901.)

Contracts whereby the irrigation company agrees to furnish more water than it has ability to furnish are illegal, and the company will be enjoined, at the instance of those holding prior rights, from selling water in excess of the capacity of its ditch and from compelling them to pro-rate with the purchasers of such excess rights. (Mills on Irrigation, p. 195, notes 61 and 62; *Gould v. Maricopa Co.*, 8 Ariz. 429, 76 Pac. 598; *Mabee v. Platte Land Co., Ltd.*, 17 Colo. App. 476, 68 Pac. 1058.)

Neither a private or public corporation is bound by unauthorized acts of its officers. The law does not authorize the secretary of an irrigation district to make any representation as to the water rights of parties in the district. (21 Ency. of Law, 2d ed., 912, note 3.)

Richards & Haga, for Respondent.

Even if there had been a contract between the owners of the canal and the owner of the land now owned by respondent, limiting or denying his right to the continued use of the water, it would have been of no avail, as no private contract could abrogate or contravene the constitutional provision fixing the relation between the ditch company and the water users. The court, however, in this case found that there was no agreement whatever between the parties to this case or their predecessors in interest, but that the water was furnished from year to year upon the payment of the usual rental charges. (*Gould v. Maricopa Canal Co.*, 8 Ariz. 429, 76 Pac. 598; *Mandell v. San Diego Land & Town Co.*, 89 Fed. 295; Farnham on Waters, sec. 611.)

The contention of appellant that the acts of the officers of the district in accepting the money in the spring of 1906 and in turning out the water for respondent's land were unauthorized, and are therefore not binding on the district, cannot be sustained. First, because the money paid has not been tendered back, but has been kept and applied to the use

of the district by the officers and directors thereof, which was in itself a ratification of the acts of the officers, even though it be conceded they were originally unauthorized. Second, the acts of the officers complained of were fully within the powers of such officers, and appellant cannot escape liability by repudiating the acts of its officers in this case.

An irrigation district is not a municipal corporation. It is simply a public corporation. (3 Farnham on Waters, p. 1942; *Board of Directors of Middle Kittitas Irr. Dist. v. Peterson,* 4 Wash. 147, 29 Pac. 995; *In re Madera Irr. Dist.,* 92 Cal. 296, 27 Am. St. 106, 28 Pac. 272, 675, 14 L. R. A. 755; *Alfalfa Irr. Dist. v. Collins,* 46 Neb. 411, 64 N. W. 1086.)

An irrigation district is not clothed with the sovereignty of the state, and laches may be imputed to it. (*People v. Jefferds,* 126 Cal. 296, 58 Pac. 704; Long on Irrigation, sec. 137.)

It is no defense to *mandamus* proceedings to compel an irrigation company to furnish water to a consumer that the defendant has not sufficient water, where there is no averment that such other persons have demanded or purchased water. (Long on Irrigation, sec. 131; *Merrill v. South Side Irr. Co.,* 112 Cal. 426, 44 Pac. 720. )

#### ON REHEARING.

Respondent's case depends upon the establishment of the negative fact; that the appellant has not disposed of the entire water right acquired by appellant or the entire capacity of the appellant's diversion works at the time complained of herein, and that the necessity of proving these facts must, from the nature of the case, be in the possession of the appellant to disprove this negative; therefore, when the complainant shows a *prima facie* sale, rental or distribution of water to him, the presumption must necessarily arise that the defendant did have a surplus of water for use of such consumer at the time demanded over and above prior rights and the then needs of those having such prior rights. (Greenleaf on Evidence, sec. 79; 5 Ency. of Law, 42, n. 1; *United States v. Denver & R. G.*

R. Co., 191 U. S. 84, 24 Sup. Ct. 33, 48 L. ed. 106; *Selma etc. & Co. v. United States*, 139 U. S. 560, 11 Sup. Ct. 638, 35 L. ed. 266; *McIntyre v. Ajax Min. Co.*, 20 Utah, 323, 60 Pac. 552; *United States v. Southern Colo. C. & T. Co.*, 18 Fed. 275; 5 McCrary, 563; *Kelly v. Owens* (Cal.), 30 Pac. 599; *Great Western R. Co. v. Bacon*, 30 Ill. 347, 83 Am. Dec. 199; Lawson's Presumptive Evidence, p. 20, rule 5; *Spaulding v. Coeur d'Alene Ry. Co.*, 5 Ida. 533, 51 Pac. 408.)

"In the arid country the largest duty and the greatest use must be had from every inch of water in the interests of agriculture and home building. . . . ." (*City of Telluride v. Blair*, 33 Colo. 353, 80 Pac. 1053; Kinney on Irrigation, secs. 165, 166; *Bolter v. Garrett*, 44 Or. 304, 75 Pac. 144; *Salt Lake City v. Salt Lake City Water & Electric Power Co.*, 24 Utah, 249, 67 Pac. 678, 61 L. R. A. 648, 25 Utah, 456, 71 Pac. 1069.)

SULLIVAN, J.—Plaintiff, who is respondent here, brought this action for a writ of mandate to require the defendant to deliver to him seventy inches of water from what is known as the "Ridenbaugh canal," for use upon land of plaintiff. The defendant, who is appellant, is an irrigation district, organized under the laws of the state of Idaho, and is the owner of said canal. The respondent owns eighty acres of land within said irrigation district, and claims the right to seventy inches of water for use on said land from said canal.

The complaint, among other things, alleges the ownership of said land in respondent and that the appellant is the owner of said canal, and that since the season of 1905 was engaged in furnishing, delivering and distributing to the owners of lands within said district the water from said canal for irrigation purposes; that during the irrigating season of 1905, and for several years immediately prior thereto, the said canal system and irrigation works was owned, managed and controlled by a corporation known as the Boise City Irrigation & Land Co., which corporation, during the irrigating season of 1905, and for several years immediately prior thereto, furnished, delivered and distributed the water diverted through

said canal, which water was sold and rented for the irrigation
of the land of respondent and other lands within said district,
and that respondent and his predecessors in interest settled
upon and improved the said land for irrigation purposes with
a view of receiving the benefit of such water diverted through
said canal, and that respondent and his predecessors have at
all times paid the annual rental charges for the use of such
water upon said lands, and that respondent's predecessors
in interest paid to said Boise City Irrigation & Land Co., as
water rental for the year 1905, for water furnished by said
company through said canal for irrigating his said lands,
the sum of $115.50 for seventy inches of water, measured
under a four-inch pressure, the same being the equivalent of
one and two-fifths cubic feet per second of time; that in the
month of December, 1905, the Boise City Irrigation & Land
Co. sold and transferred the said irrigation system, with all
its rights and water appropriations, to the appellant, which
ever since has been the owner and in the management
and control thereof; that in the month of March, 1906, the
predecessor of respondent received the following notice from
the appellant company as the rental charge for water for use
upon said land for the irrigation season of 1906:

"Meridian, Idaho, March 20, 1906.

"You are advised that the Nampa & Meridian Irrigation
District has fixed a toll of $1.00 per miners' inch on all old
water delivered in the district for 1906, payable in cash be-
fore the water will be turned in for the user. The balance
of the expenses for the year will be assessed in the usual
manner. The Board makes this charge at this time to secure
means to pay running expenses of the district, which this
year will include the litigation over water rights in Boise
river, otherwise they would be forced to borrow at exorbitant
rates to pay current expenses. No water will be supplied
until this toll is paid.

"By order of the Board.

"G. T. HAMILL,
"Secretary."

That thereafter respondent's predecessor paid to the said appellant corporation the sum of $70 and received the following receipt therefor:

"Office of the Nampa & Meridian Irrigation District.

"Meridian, Idaho, April 24, 1906.

"Received of G. T. Kinzer the sum of $70.00 in payment of toll for seventy (70) inches of water for irrigation season of 1906, to be used on the following land in Ada County, Idaho, to wit: N. ½ SE. ¼ in Sec. 8, T. 3 N. R. 1 E., B. M.

"G. T. HAMILL, Secretary,

"STALKER."

That respondent, relying upon the fact that said land had for several years immediately prior to May 7, 1907, received from said canal system water for the irrigation thereof under a sale and annual rental, purchased the said land for a valuable consideration on the last-mentioned date; that said land is now in a high state of cultivation, about seventy-seven acres thereof being in growing crops; that if the said land is now deprived of water, the crops of respondent now growing thereon will not mature but will be parched and destroyed for lack of moisture, to the great and irreparable injury of respondent; that respondent is unable to procure water for the irrigation of said land from any other source; that he has at all times complied with all the rules and regulations of said appellant relating to consumers of water from said canal system and paid all charges and assessments required of and made against said lands, and that he is now the owner of the right to have delivered to him from said canal system, seventy inches of water for the irrigation of said lands; that although demand has been made of the appellant for seventy inches of water to be used upon said land, the appellant has refused and still refuses to deliver the same or any part thereof.

It is further alleged that respondent has no plain, speedy or adequate remedy at law; that respondent and his predecessors in interest have at all times been ready and willing to comply with the rules and regulations of said irrigation district, and have always paid, and have been ready and willing to pay, all taxes, assessments and charges levied or which may

be levied against said lands for water furnished therefor; that such taxes have been paid for the years 1904-5-6, and that said land has been assessed and charged the same as other lands situated within said district during said years for the expense incurred by said district in the management of said irrigation system and in the payment of interest on the bonds issued by such system, which are, and for a long time will continue to be, a lien against said land, and that respondent's said premises are charged with and subject to taxation for the payment of such charges, interest and bonds, all of which this respondent is ready and willing to pay as the same may be levied and assessed; that seventy inches of water, under a four-inch pressure, is necessary to properly irrigate said land, and that said amount has in former years been furnished and delivered to said lands by the appellant and its predecessors in interest and whenever furnished, fifty inches thereof has been delivered through what is known on said canal as "Tap No. 75," and twenty inches has been delivered through what is known as "Tap No. 77."

The prayer is for a writ of mandate to compel the delivery of such water.

Most of the material allegations of the complaint are denied by the answer and the facts set forth, reciting under what circumstances water had been delivered by the appellant and its predecessor for use upon said land, and it is averred that long prior to any of the dates mentioned in the complaint, all of the water carried by said Ridenbaugh canal had been applied for by land owners under said canal, and had been delivered to such land owners and by them used for the purposes of irrigation. Paragraphs 3, 4 and 5 are as follows:

"3. Defendant says that for many years prior to the year 1904, said Boise City Irrigation & Land Co. had maintained and operated a certain waste water ditch known as the Wilson Railroad Drain, which passes through the Wilson Fruit Co. orchard and crosses the railroad right of way onto the land of plaintiff, and which ditch collects the waste water accumulating therein from the lands adjoining the same, and carries the same to said point on the railroad where said

ditch passes onto the land of plaintiff. Defendant states upon information and belief that in the year 1904, plaintiff applied to the said Boise City Irrigation & Land Co. for the privilege of renting the waste water carried by said Wilson Railroad Drain for use in the irrigation of said land of plaintiff, and thereupon said parties orally agreed upon the rental thereof for the reasonable value to be thereafter determined, and said Boise City Irrigation & Land Co. measured said water during said season at a point on said ditch immediately south of the railroad track where said ditch crosses said track, and said plaintiff used said water and no other during said irrigation season for the irrigation of said land, and at the close of said season, said parties mutually agreed upon the price of said water, which was accordingly paid by the plaintiff to said Boise City Irrigation & Land Co.

"4. That thereafter the same arrangement was continued in the year 1905, by said parties and in the year 1906 by the said plaintiff and this defendant, and in each of said years said land was irrigated from said source. That the water so rented was waste water running off from the lands of water users and not what is commonly termed 'live water' or water delivered direct from the Ridenbaugh canal; and defendant says that the owners of the land of plaintiff have never at any time rented 'live water' from the owners of said canal for use on said land or paid for such water.

"That at this time a large amount of water is running in said drain ditch onto the said lands of plaintiff, the same amounting to fifty to eighty inches of water and being amply sufficient for the irrigation thereof, but that plaintiff has failed to make application therefor for the season of 1907, and has made no payment to this defendant on account thereof, and the defendant denies that any amount of water in excess of fifty inches is required for the proper irrigation of said land.

"5. Defendant denies that any water rented for use on said land has ever been delivered through said Taps No. 75 and 77, or that plaintiff has any ditch or other means of receiving water at said places."

The appellant further denies that respondent has ever been taxed by appellant for water from said canal or for any part of the purchase price of said canal and has not paid any such taxes, nor were such taxes paid at any time by the predecessors of respondent; denies that it ever made any agreement with the respondent or his predecessors whereby it agreed to deliver water from said Ridenbaugh canal for the irrigation of said land; denies that it has ever received any money in consideration of any agreement for such water, and avers that all moneys paid by respondent or his predecessors for water were on account of waste water to be delivered through what is known as the Wilson Railroad Drain or waste ditch; avers that all of the water carried by said canal had been applied to a beneficial use by prior users of water, and that such prior users still continue to use the same.

For a further defense, it is averred that the purchase of said Ridenbaugh canal and the water rights connected therewith was made by appellant under the laws of this state authorizing irrigation districts to make such purchase by means of a certain bond issue, which bond issue was duly authorized by special election, and that preparatory to said election appellant duly apportioned and distributed the costs of such purchase as well as the enlargement of said canal to each tract of land in appellant's district, including the tract of land described in the complaint, and that in making such apportionment the cost of said canal and water rights were charged to the lands upon which existing water rights theretofore diverted by said canal had theretofore been used, being the cost of $825 per second foot for the water actually claimed and used upon such land, and the estimated cost of enlargement of said canal for the acquirement of water for lands not supplied from said existing water rights was charged to such lands at the rate of $15 per acre; said water rights being designated respectively as "old water" and "new water" in such apportionment, and appellant duly made a list of such apportionment and distribution of cost, and in such apportionment and the list thereof no part of said canal and said water rights was apportioned to the land of respondent, and the only ap-

portionment and appraisement of benefits of said land was on account of the proposed enlargement of the said canal for the acquirement of "new water," and said land of respondent was not charged with any part of the cost of said canal or the water diverted thereby.

It is alleged also that said bond issue was for the sum of $285,000, and the whole thereof, and no more, was used for the purchase of said canal and water rights, and that the same was apportioned under said apportionment of benefits as "old water," and that the said assessments of benefit for "old water" show the part of said bond issue assessed to each tract of land, and that no part thereof was assessed to said land of respondent; that in September, 1905, in pursuance of the requirements of section 16 of the act governing irrigation districts, the appellant filed an action in the proper district court for the purpose of obtaining a judicial examination and approval and confirmation by such court of each and all of the proceedings for the organization of such district, and such proceedings were had on October 30, 1905, and judgment was duly given and made by said court, whereby it was duly adjudged and decreed, among other things, as follows:

"And it is further adjudged and decreed that each and all of the proceedings taken by the said board of directors in determining the benefits which will accrue to each tract or legal subdivision of land in said district from the purchase and construction of the proposed irrigation works, and in the apportioning or distributing the costs of such works over such tracts or subdivisions of land and the list of such apportionments made by said board and all proceedings which may affect the legality or validity of said bond issue . . . be and the same are hereby approved and confirmed."

And it is further averred that by reason of said judgment, and by reason of the said apportionment of benefits, respondent is now estopped from claiming any right to the water diverted through said canal as against said district and the users of the water to whom the cost of said canal was apportioned and charged; that said canal has not been enlarged and no additional water has been secured, neither have any bonds

been sold under said apportionment of benefits for the enlargement of said canal. The prayer is judgment for costs.

It will be observed from the foregoing issues made by the pleadings that the real issue between the parties is whether at the time from which, or at the date from which respondent claims the right to the use of seventy inches of water, the appellant had any surplus water which was available for the irrigation of the lands of the respondent, or whether all of its water had been taken and used by other applicants prior to the application of respondent or his predecessor for water for use upon said land. If prior applicants and users were entitled to all of the available water at said date or time, the respondent cannot compel the appellant to deprive such prior users of any water which they are entitled to. It will be observed from the pleadings that the appellant places in issue the most of the material allegations of the complaint, and it further alleges that the only water right owned by respondent is for waste water from the ditch known as the Wilson Drain ditch, which water the respondent was actually receiving and using upon his land. There is substantially no conflict in the evidence. After the trial the court found for the respondent and entered judgment requiring the appellant to deliver water to respondent from said canal as follows: fifty inches from "Tap 75" and twenty inches from "Tap 77"; and further directed that in case of shortage of water in said canal, that respondent shall be supplied with water subject to a reduction of the same amount common to all users of water under said irrigation system.

A motion for a new trial was made and overruled. The appeal is from the judgment and from the order denying a new trial. Many of the facts involved in the trial of the issues made by the pleadings were settled by stipulation of counsel, and the main question which the court was required to determine from the testimony was the agreement under which water was furnished by the appellant for the irrigation of said land, and on that question the court found as follows:

"That no agreement was at any time made between the said plaintiff and his predecessors in interest and the said de-

fendant and its predecessors in interest, regarding terms or method as to the delivery of such water.'' The main point at issue is whether the facts and circumstances on which the water was furnished for the irrigation of said land come within the provisions of section 4, article 15, of the constitution of this state, and whether under the provisions of that section, the water having once been used in the irrigation of said land, the owner can compel by mandate the irrigation district to continue furnishing it for that purpose. The provisions of that section of the constitution are as follows:

''Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented, or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same, when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law.''

It is contended by counsel for respondent that this case comes squarely within said constitutional provisions, and that the court made findings of fact to that effect. We shall, therefore, be required to review the facts presented by the evidence in the determination of that question. The evidence clearly shows that exclusive of twelve acres of said land in the southwest corner of said tract, lying under said Tap 77 of the Ridenbaugh canal, it had been irrigated during each irrigation season from 1904 to the date of the commencement of this suit with waste water derived from what is known as the Wilson Drain ditch, and that said land had received no water whatever from any other source. It further appears from the evidence that in 1905 and 1906 a small amount of water suffi-

cient to raise a crop of grain was delivered to said twelve acres of land from said canal through said Tap 77. It also clearly appears that the water so furnished for the irrigation of said twelve acres was in excess of the carrying capacity of said canal, and was not capable of regular or continuous delivery,—that is, when all of the prior users of water from said canal were using the full amount of the water they were entitled to receive from said ditch, the entire capacity of said canal would be used for that purpose, and that said canal did not carry sufficient water to irrigate said land of the appellant after supplying prior users. It also appears that said Wilson Drain ditch is a drain ditch that starts a short distance along the railroad east of the Wilson Fruit Company's ranch and runs west along the railroad and off on the land of respondent; that its water supply comes from the drainage of several farms; that the only water running in said ditch is waste water; that said drain ditch is not a distributing lateral from the Ridenbaugh canal and never has been, and is not connected by any ditch with the canal.

Respondent's predecessor in interest testified that said drain ditch was constructed partly by himself and partly by Mr. Wilson about twelve years ago, and it was constructed for the purpose of draining the water from the Wilson orchard and other land to keep the water from flooding the orchard; that it is about a mile and a quarter long. He also testified that this drain ditch runs through the Wilson orchard and picks up the water from that orchard, and said witness testified as follows: "I settled for the water received at the end of 1905 and I had received the water through this ditch on all but about twelve acres of this place." The evidence shows, during the several years that respondent's predecessor was taking water from the Wilson Drain ditch for the irrigation of all of his land, except the twelve acres referred to, no "live water" from said canal was ever turned into said drain ditch, and that said drain ditch is not connected by any ditch with the said canal.

It is suggested by counsel that the Wilson Drain ditch is so situated that water from the main canal can be turned down through natural draws to the Wilson Drain ditch where

·it could be collected and again distributed to the land of respondent and other lands. We find nothing in the record sustaining this statement. While there may be natural draws, as stated, there is no evidence showing that water had been turned into such draws for the purpose of carrying the same to the Wilson Drain ditch for distribution to customers. Mr. Green testified as follows: "Its [Wilson's Drain ditch] water supply comes from the drainage of several farms. It is waste water. It is not a distributing lateral from the Ridenbaugh canal and never has been during the time I was manager." It is clear from the record that the Wilson Drain ditch never was a distributing lateral connected with the main canal, but was a ditch used for collecting the waste water from several farms in that region, and particularly the Wilson fruit farm.

The record clearly shows that the owners of the canal had reached the point where it was not safe to take on any more regular customers; that if those who were entitled to water had demanded all of their water at the same time, it would require the full capacity of the canal to convey it to them. On this point Mr. Green testified (referring to flood water such as had been used on respondent's land) as follows: "That water would be in excess of the carrying capacity of the canal if all the users were using water. We reached a point where it was not safe to take on regular customers. Then when we would have water, we would accommodate people through the system who wanted to take the chances on flood water. We turned it off when we wished without notice. We never gave anyone to understand that it was a permanent water right."

Mr. Kinzer, who was the predecessor in interest of the respondent to said land, testified as follows on the question under consideration:

"On the rest of the place in 1905, I used the water from that drain almost the entire season until the shortage came, until they cut the canal, then water was turned in from the main canal as I understood it. I know there was extra water turned in sometime in July, as I remember. Prior to that time there never was any water turned in from the main canal for any use in that drain ditch. I claim, as I under-

stood it, that in the month of July, 1905, there was some water turned in for me. I came up here and told Mr. Green if he didn't turn some water out of the main canal, my ditch would go dry. He said, 'I will fix that,' and the next morning extra water was turned in. I think I did complain at that time that the Wilson Fruit Co. wasn't getting its water, and I went to him at that time in their behalf for water. At that time I told him we were all short. He did not turn in water in excess of what the Wilson Fruit Co. was entitled to receive.'' It appears from the evidence that the water used upon said tract of land came mostly from the waste water from the Wilson orchard, and it also appears that the only ''live water'' used in the irrigation of said land was used in the irrigation of the twelve acres of land in the southwest corner of said tract, and that was only used for a short time when the full capacity of the canal was not required by prior users of water. The evidence shows that the owners of said canal had reached the point where it was not safe to take on any more regular customers or users. It clearly appears that the appellant had prior regular customers for all of the water said canal would carry when each and every of them were demanding all of the water that they were entitled to, but that at certain times they were not all demanding all of the water they could rightfully demand, and at such times the manager of the canal would let others have some water. It appears that at times there was a surplus of water, and it also clearly appears that when all of the prior customers were demanding the full amount of water to which they were entitled, said canal would carry no more water than such customers were entitled to have. If that be true, and we think it is, the appellant was bound to limit its contracts for water to the capacity of its canal, and under said provisions of our constitution, it was not intended to compel a canal company, that had already sufficient customers to use all of the water the capacity of its canal would carry, to perpetually furnish water to anyone to whom it had furnished water at times when its regular customers did not require it. It appears to us that the point involved in this

case is, can a canal company be compelled by mandate to perpetually furnish water to a person whom it has 'simply accommodated with water at times when its regular customers did not need it and when the water of its regular customers would require the full capacity of its canal, if demanded? We must answer this question in the negative. If, under the provisions of said section of our constitution, a canal company is compelled to furnish water to subsequent applicants, when the capacity of its canal has already been exhausted by prior applicants and users, it would present a condition which was not intended by the provisions of said section of the constitution. Those provisions of our constitution and laws of this state do not contemplate the acquiring of a water right beyond the carrying capacity of the canal when the prior users are demanding their full amount of water. In other words, the aggregate rights of the users of water cannot exceed the capacity of the canal, and any temporary deliveries of water in excess of the capacity of the canal cannot be turned into a perpetual water right by the person to whom such deliveries are made, and it seems clear to us that a canal company cannot be compelled by mandate to make regular deliveries of water beyond the capacity of the canal. Under the provisions of our constitution and statute, the canal company must respect the rights of prior users of water therefrom, and one desiring to use water cannot compel a canal company to sell water beyond the capacity of its canal. Under our statutes a company is prohibited from contracting to deliver more water than its canal will carry. (See Sess. Laws 1899, p. 380, sec. 19.) It is stated in Mills on Irrigation, page 195, that contracts whereby an irrigation company agrees to furnish more water than it has ability to furnish are illegal; and in *Gould v. Maricopa Canal Co.,* 8 Ariz. 429, 76 Pac. 598, the court said:

"Where applications to a water company for water for irrigation exceed the capacity of the company's canal to furnish it, it is the duty of the company to limit the contracts to its capacity and to those appropriators possessing the older rights of appropriation."

Those provisions of our law and the decisions upon that
point we think are wholesome, as irrigation companies are
tempted to sell more water than their canals will carry, and
temptation has brought about the enactment of laws prohib-
iting such contracts. While we recognize the fact that one
may acquire a perpetual right to the use of water under the
provisions of our constitution simply by use and payment of
rental, up to the capacity of the canal, yet after the capa-
city is fully taken, subsequent users cannot acquire a per-
petual water right therein to the detriment of such prior
users.

It is contended by counsel for respondent that no issue was
made by the pleadings as to the scarcity of water or the
insufficiency of the supply. In this class of cases, the plain-
tiff should aver and prove that the canal company has suffi-
cient water to supply him with the desired amount, and that
its canal has sufficient capacity to carry it. However, we
find the following averment in the second paragraph of the
answer, to wit:

"And defendant further says that long prior to any of
the dates mentioned in the said affidavit, all of the water
carried by said Ridenbaugh canal had been applied for by
land owners under said canal, and had been delivered to such
land owners and by them used for the purposes of irriga-
tion."

And in the eighth paragraph of the answer, it is averred
as follows:

"About January 1, 1906, all of the water carried by the
Ridenbaugh canal had been applied to a beneficial use by
prior users of water, and defendant says that none of said
users of water have been made parties hereto, although they
have continued and still use said water and the whole thereof."

Those are sufficient averments or allegations of the fact that
all of the water which the canal will carry has been appro-
priated and applied to a beneficial use by prior users, and
put it in issue.

It appears from the record that the term "flood water" is
used a number of times. This flood water was a surplus of

water that occurred at times when all of the prior users were not requiring their entire amount of water. This flood water was delivered to different people whenever the managers had any of it to spare. Mr. Green, who managed the said canal eleven years, testified as follows: ''We delivered certain water we called 'flood water.' That water would be in excess of the carrying capacity of the canal if all the users were using water. We reached a point where it was not safe to take on regular customers. Then when we would have the water (flood water), we would accommodate people through the system who wanted to take chances on flood water. We turned it off when we wished, without notice. We never gave anyone to understand that this was permanent water right. No applications were made for it except verbally and no contracts signed or anything of that kind.'' He further testified: ''We were not prepared to take the risk of making any contracts for the entire season. We were running the ditch pretty near to the limit of safety.''

The evidence on behalf of the appellant is sufficient to establish that allegation of the answer above quoted, to wit: That all of the water carried by the Ridenbaugh canal had been applied to a beneficial use by prior users of water, prior to the time that any water whatever was furnished for the irrigation of the land in question, and the finding of the court to the effect that there was a surplus of water in the canal, or that there was a surplus carried by said canal over and above the amount to which prior applicants and users were entitled, is not supported by the evidence. The appellant, its agents or servants, would have no authority to deprive prior users of water under a sale or rental, by delivering such water to a subsequent applicant, and it is necessary in this case for the respondent to show that the appellant has a surplus of water running in said canal over and above that to which prior users are entitled before he can recover in this action.

It is contended by counsel for respondent that the evidence conclusively shows that the capacity of the ditch is sufficient to carry all of the water the prior users were entitled to, and

in addition thereto, the seventy inches claimed by the respondent. Counsel no doubt bases this contention upon the stipulated facts where it was stipulated that it was adjudged and decreed that the appellant had a right to divert from Boise river 27,042 inches of water, and had been diverting that amount for many years prior to the entering of said decree, and distributing it to lands under it. That decree was not in this action, but was in an action determining the amounts and priorities of those using water from Boise river. That stipulation also shows that appellant is furnishing water for about 25,000 acres of land, and it is contended it appears that the appellant is supplying only about five-eighths of an inch per acre to most of its water users. That stipulation shows also that the duty of water is one inch per acre, and that the user is entitled to that amount if his necessities require it.

We do not think under the facts of this case that those stipulated facts are sufficient, when taken in connection with the oral evidence on the trial, to show that there was a surplus of water in said canal at the time plaintiff first received any water from said canal. It is a well-known fact that in such a large canal there is considerable loss by seepage and evaporation between the head of the canal and the points where the water is measured to the water user. Until the amount of loss is ascertained and established, the stipulation contains no data from which a surplus of water can be shown to be carried by said canal. The oral evidence given on the trial shows that there was no surplus whatever carried when all of the prior users were receiving all the water they were entitled to receive.

The record shows that the respondent is seeking the benefit of the purchase of this canal system without being taxed for any part of the purchase price thereof, although he avers that he is willing to be taxed therefor. The record contains a history of the organization of the appellant irrigation district and its acquisition of the Ridenbaugh canal and the water connected therewith. Provision is made for the distribution of the purchase price of the canal system, and no part of the purchase price was charged to this defendant's

lands, but provision was made for the assessment of what is there termed "old water" to farm lands that had already used the water to the amount of $264,825, and the amount of the benefit to such lands was fixed at $16.50 per inch. In accordance with the plan, the list of apportionment of benefits classified the benefits under two heads, one of "old water" and the other, "new water." As there used, "old water" refers to existing water rights and "new water" refers to rights yet to be acquired. Respondent's land is not appraised with nor assessed for any "old water" whatever, and therefore, under said plan, was not charged with any part of the cost of the Ridenbaugh canal. To supply any "new water," the canal must be enlarged, and it is in evidence that no enlargement has been made of this canal system, and until that is done, no "new water" rights can be acquired therefrom. The cost of the Ridenbaugh canal system has been apportioned to certain lands, of which no part has been apportioned or assessed to the land in controversy.

Counsel for respondent suggest that the written receipts and notice of the appellant introduced in evidence constitute an estoppel against appellant. We are not in accord with that view, for if the capacity of the canal was only sufficient to carry the water due to prior users, no act of the agent or the officers of the company by letting others have some water could estop the appellant from setting up in this action the fact that the ditch would not carry any more water than prior users were entitled to receive. The agents and officers of the company could not by such acts deprive the prior users of their right to the water.

The conclusion reached is that the judgment of the trial court must be· reversed and a new trial granted, and it is so ordered. Costs are awarded to the appellant.

Ailshie, C. J., and Stewart, J., concur.

### ON REHEARING.

### (February 25, 1909.)

10. Under art. 15, sec. 4, of the constitution, water appropriated or used for agricultural purposes, under a sale or rental, shall be deemed an exclusive dedication to such use; and when once sold or rented to a person settling upon or improving land for agricultural purposes with a view of receiving the benefit of such water under such dedication, such person shall not thereafter without his consent be deprived of the annual use of the same when needed, upon payment therefor and compliance with equitable terms.

11. The dedication of water to a beneficial use upon land under the constitution does not extend beyond the character of the water so dedicated, and where all the waters of a canal have been appropriated and applied to a beneficial use under a sale or rental, and when not needed by the appropriators thereof, are furnished under a sale and rental to a subsequent applicant, the dedication of the latter extends only to the right to use such water when not required or needed by the prior appropriator.

12. It is the policy of the law to prevent the waste of water, and when prior appropriators of a canal are not using all of the water to which they are entitled, the canal company may supply such water to any other applicant therefor, but by so doing such applicant does not become vested with a right which can in any manner interfere with the right of the prior appropriator.

13. In an action to compel a canal company to furnish water to an applicant therefor, if the application be for lands which have not previously been irrigated, then it is incumbent upon the applicant to allege and prove that the canal company has water flowing in its canal to which prior appropriators are not entitled.

14. If, however, water has been once dedicated to land under a sale or rental, and the canal company cuts off such supply and declines to furnish the same, then, in an action against the company, he makes a *prima facie* case by showing the previous use and the offer to pay or secure the charge made therefor, and the offer to comply with all reasonable rules and regulations of the company; and the burden is upon the company to show why the water is cut off or not furnished, or, if the dedication be less than a continuous, perpetual use, the company must show the same.

15. Where waste water only is furnished by a canal company to an applicant, under a sale or rental therefor, the same becomes a dedication only of such waste water; and the user thereof can only maintain an action against the canal company compelling the com-

pany to furnish the user with such waste water, if any, and cannot compel the canal company to furnish a perpetual supply of water such as is required to be furnished to an original appropriator.

16. Where a canal company furnishes an applicant with waste water from a drain ditch, supplied wholly with water wasting from other lands, the user thereof cannot compel the canal company to maintain such waste water, even though a rental is charged therefor when used, for the rights of the user depend wholly upon the water wasted into the drain ditch and his right thereto.

(Syllabus by the court on rehearing.)

STEWART, J.—A rehearing was granted in this case and the cause was again argued exhaustively, and the court has again made a thorough examination of the case as presented by the record. Upon the rehearing it is strenuously contended by counsel for respondent that this court erred in announcing as a rule of evidence: "It is necessary in this case for the respondent in this case to show the appellant has a surplus of water running in said canal over and above that to which prior users are entitled, before he can recover in this action." While this rule is correct, as applied to certain facts, we have deemed it proper to clearly draw the distinction between the cases to which this rule is applicable, and cases falling under the reverse of the rule.

The evidence clearly establishes the fact that the lands of respondent were irrigated prior to 1907 with water for which the appellant and its predecessor in interest charged an annual rental therefor. The court found, Finding 18:

"That at no time prior to the date the said defendant purchased and took possession of said canal system, (Jan. 1st, 1906), or at any time since such date, has the full capacity of said canal system or all of the water carried by such system, been applied to a beneficial use by users of water prior to the said plaintiff."

This finding presents the most important question involved in this controversy, and that is, whether the water with which the respondent's land was irrigated, prior to 1907, and for which appellant and its predecessor in interest charged an annual rental, was water flowing in the canal system of the

appellant which had not previously been appropriated by other users; or whether the water, with which respondent's land was irrigated, was surplus water supplied to respondent and his predecessor in interest at times when the prior appropriators thereof were not in need and not using, and if the latter, what is the extent of the respondent's right by such use or the dedication made by his use of such water.

Under art. 15, sec. 4, of the constitution, "Whenever any waters have been, or shall be, appropriated or used for agricultural purposes, under a sale, rental, or distribution thereof, such sale, rental or distribution shall be deemed an exclusive dedication to such use; and whenever such waters so dedicated shall have once been sold, rented or distributed to any person who has settled upon or improved land for agricultural purposes with the view of receiving the benefit of such water under such dedication, such person, his heirs, executors, administrators, successors, or assigns, shall not thereafter, without his consent, be deprived of the annual use of the same when needed for domestic purposes, or to irrigate the land so settled upon or improved, upon payment therefor, and compliance with such equitable terms and conditions as to the quantity used and times of use, as may be prescribed by law."

This section of the constitution deals with unappropriated and undedicated water. It does not apply and is not intended that water, which is temporarily being used, shall thereby be dedicated to a perpetual use to the exclusion of those who are entitled to the same by a prior right. This section of the constitution must necessarily be construed in connection with the provisions of sec. 5 of the same article, which provides:

"Whenever more than one person has settled upon, or improved land with the view of receiving water for agricultural purposes, under a sale, rental, or distribution thereof, as in the last preceding section of this article, provided, as among such persons priority in time shall give superiority of right to the use of such water in the numerical order of such settlements or improvements; but whenever the supply of such

water shall not be sufficient to meet the demands of all those desiring to use the same, such priority of right shall be subject to such reasonable limitations as to the quantity of water used and times of use as the legislature, having due regard both to such priority of right and the necessities of those subsequent in time of settlement or improvements, may by law prescribe."

Thus it will be seen when these two sections are construed together, that while the application and use of water under a sale, rental and distribution thereof is deemed an exclusive dedication to such use, yet such dedication cannot extend beyond the character of the water thus dedicated; that is, where all the water of a canal has been appropriated and applied to a beneficial use under a sale or rental, and when not needed by such appropriators, is furnished under a sale and rental to a subsequent applicant and is used by such applicant for a beneficial use, the dedication extends only to the right to use such water when not required and needed by such prior appropriators. The rights of the prior appropriator must at all times be recognized; and in an action to compel the owners of a canal to furnish water to such subsequent applicant, the canal company can only be compelled to furnish the water so dedicated by such applicant, that is, the waters applied to a beneficial use by him when not needed by the prior appropriators thereof.

We do not understand that where all of the water flowing in a canal has been appropriated, but at times when such appropriators are not using all of such water, the same is furnished by the canal company, temporarily, to an applicant therefor, that such applicant thereby secures a perpetual right to use such water as against the prior appropriators thereof, and that the canal company can be compelled to supply such applicant with such water when demanded by the prior appropriators. It is the policy of the law to prevent waste of water, and when prior appropriators in a canal are not using all of the water to which they are entitled, the canal company may supply such water to any other applicant therefor, but by so doing such applicant does not become vested

with a right superior to that of the prior appropriators. (*Van Camp v. Emery,* 13 Ida. 202, 89 Pac. 752.) His right is measured by the character of the water supplied him. In other words, if the water supplied him was merely for a temporary use, when not required and needed by prior appropriators, his right extends only to the temporary use when such prior appropriators are not in need of the same, and it is to this extent, and to this only, that a dedication of such water takes place under the constitution. When such water is demanded and required by prior appropriators, the constitutional rights of the subsequent user are not interfered with by taking the water from him and giving the same to the prior appropriator. If, then, Finding No. 18, supra, is supported by the evidence, that there was water flowing in the appellant's canal unappropriated at the time respondent made demand therefor in May 1907, upon the respondent offering to pay the price demanded by the irrigation district, or securing the same, and complying with all reasonable rules and regulations of the district, the respondent was entitled to the water demanded, and could apply to the courts for a writ of mandate to require the appellant to furnish such water.

This brings us to a consideration of the rule of evidence announced in the former opinion and referred to in this opinion at its opening, and that is, upon whom does the burden of proof rest where it is sought by a water user to compel a canal company to furnish water for his use? If the application for water be for lands which have not previously been irrigated, then it is incumbent upon the applicant to allege and prove that the canal company has water flowing in its canal to which prior appropriators are not entitled; and it was in this sense that the court announced this rule in the former opinion, treating the case from the standpoint that the only water used by the respondent was waste water, the use of which gave the respondent and his predecessor in interest no right to demand water directly from the canal. If, however, water has been received under a sale or rental, and applied to a beneficial use upon land, then such water

is dedicated to such use; and when such user applies to the court to compel the canal company to furnish such water, he makes a *prima facie* case by showing the previous use and the offer to pay or secure the charge made for such use and the offer to comply with reasonable rules and regulations of the company; and the burden is upon the company to show why it does not or cannot furnish the same, or the extent of the dedication. (*Wilterding v. Green*, 4 Ida. 773, 45 Pac. 134; *Shelby v. Farmers' Co-op. Ditch Co.*, 10 Ida. 723, 80 Pac. 222; *Bardsly v. Boise Irr. & Land Co.*, 8 Ida. 155, 67 Pac. 428.)

If the water furnished by the canal company or district was surplus water only, that is, water not required by prior appropriators at the time the same was furnished, then the user acquires a right only to such surplus water, and the canal company may show such fact, and can only be compelled under such circumstances to furnish the water to the user when not required by prior appropriators. In this case, as shown by Finding 18, the court found that the full capacity of the appellant's canal system or the water carried therein had not been applied to a beneficial use by users prior to the application of the plaintiff. There is some evidence to support this finding; there is strong evidence against this finding; but inasmuch as there is a conflict in the evidence, we cannot say it is not supported by the evidence.

It is next contended by appellant, and this court was impressed with that contention upon the original hearing, that the only water, furnished by appellant and its predecessor in interest and applied to a beneficial use by respondent and his predecessor in interest, was waste water. It appears from the evidence that the greater portion of the lands of respondent was irrigated from water taken from what is designated in the record as the Wilson Drain ditch, that is, a ditch which did not connect with the canal system of the appellant district, but a ditch which was supplied wholly from water furnished to other lands and wasted from such lands into such drain ditch. Of course if that fact be true, the respondent could not maintain an action against the appellant requiring

the appellant to supply such waste water, as the supply does not depend upon the acts of the appellant but wholly upon the water wasted from lands of other users. The trial court in its findings and decree directs that the appellant furnish to respondent fifty inches of water through Tap 75; but the record does not show a ditch or channel connecting Tap 75 with the lands of the respondent. The water turned out through Tap 75 and which eventually wasted upon the lands of the respondent was water turned out through said tap upon request of one G. T. Kinzer, the predecessor in interest of the respondent, who at such time had charge of and was managing what was known as the Wilson fruit farm; and the water turned out through Tap 75 was turned out for the purpose of irrigating the Wilson fruit farm. This being true, the court was in error in directing the appellant to turn out through Tap 75 fifty inches of water for the use upon the lands of the respondent. The mere fact that the appellant collected a rental from respondent for water taken from the Wilson Drain ditch would not give the respondent a right to demand and receive water directly from the irrigation system of the appellant, in the absence of such Wilson Drain ditch connecting with such system, as the respondent's right would depend wholly upon the water in the waste ditch. If there was no water wasted therein, then the respondent is not entitled to receive water directly from the canal system of the appellant, and is confined only to his right to the waste water flowing in the Wilson Drain ditch, if any. If he desired to receive water directly from the canal system of the appellant, it was his duty to connect himself with such system. While it is true that a canal company is required under the law to deliver water to a user at such proper and convenient places as he may demand, yet a canal company cannot be compelled to turn out water through a tap in its canal when the applicant has made no provision for taking the same at such point and carrying the same to his lands.

The court in its decree directed that the appellant turn out twenty inches of water through Tap 77 for the purpose of irrigating respondent's lands. A careful review of this

case convinces us that water was taken directly from the appellant system through Tap 77 to the lands of respondent and his predecessor in interest prior to the year 1907, and by reason thereof the water so taken became dedicated to such use to the extent of the water so furnished; that is, if it was water which had not previously been appropriated and was supplied to the respondent under a sale and rental thereof, then the respondent's right to the use becomes perpetual. If, however, such use was merely temporary and was supplied only when prior users were not demanding the same, then the respondent's right extended only to the water furnished, the surplus water.

From the record in this case it is apparent that the trial court proceeded in making its findings and decree upon the theory that the furnishing of water by the appellant and its predecessor in interest to the respondent and his predecessor in interest thereby perpetually dedicated such water to the lands of respondent, without reference to whether the water so furnished and used was the surplus water flowing in the canal system of the appellant or water which had previously not been appropriated. To do justice between the parties to this controversy will require a new trial of said case, and, inasmuch as the cause must be *reversed*, because the evidence does not warrant the decree of the court in directing that fifty inches of water be supplied respondent through Tap 75, we have concluded that it is proper that a new trial should be granted herein, in order that the parties may present their case in line with the law as herein announced.

The judgment is *reversed* and a new trial ordered. Costs awarded to appellant.

Ailshie, J., concurs.

SULLIVAN, C. J. (Concurring in the conclusion reached.)—I concur in the conclusion reached by my associates, but I cannot consent to the doctrine that sections 4 and 5 of article 15 of the constitution apply to any water except such as has been appropriated for agricultural purposes under a sale, rental or distribution thereof, and water

the annual right to the use of which the appropriator shall not be deprived without his consent. It does not apply to what some have termed "flood water" or water not in use by a prior appropriator which the ditch company may rent or sell to others temporarily, nor to waste water, for the user of such waters is not absolutely entitled to the annual use of the same unless the prior appropriator does not need it, or in case there may cease to be any waste water for the appropriator of such water to use. The last two classes of users, as a matter of right, cannot compel the ditch companies to deliver such water when there is none. In a canal where its full capacity is taken to supply prior users with water, the prior users are entitled to the full capacity of such ditch whenever they need it, and the ditch company has no power or authority to deliver flood or surplus water annually, if there is none; nor have they the authority or power to compel the prior users to waste any certain amount of water so that one appropriating waste water may receive any certain amount thereof.

It is provided, among other things, in section 4 of said article of the constitution, that whenever the water therein referred to has been dedicated as therein provided, by sale, rental or distribution, to any person who has settled upon or improved agricultural lands, with a view of receiving the benefit of such water under such dedication, such person "shall not thereafter, without his consent, be deprived of the *annual* use of the same when needed for domestic purposes, or to irrigate the land so settled upon or improved," etc. This section of the constitution, as well as section 5, clearly applies to only such water as the user may rightfully demand annually, as the constitution provides that he "shall not thereafter, without his consent, be deprived of the *annual* use of the same." Said provisions of the constitution have no application whatever to any waters that the user may be deprived of the "annual use" without his consent. They therefore do not apply to flood waters or water which the prior appropriators may not at the time need, or to waste water, as the users of such water have not the right to de-

mand and receive the same "annually," whether there be any flood or waste water. Those provisions apply only to such water as may with right be demanded annually by the user, and which the constitution provides the user "shall not thereafter, without his consent, be deprived of the annual use of the same." They do not apply to waters that the user may be deprived of without his consent.

There is no doubt but what the legislature has authority to provide by law for the use of water when not in use by prior appropriators. The legislature has provided for the appropriation of waste water by section 3246 of the Revised Codes, which is as follows: "All ditches now constructed or which may hereafter be constructed for the purpose of utilizing seepage, waste or spring water of the state shall be governed by the same laws relating to priority of right as those ditches, canals, and conduits constructed for the purpose of utilizing the waters of running streams." The act embodying this section was passed in 1899. (See Laws 1899, sec. 23, p. 383.)

But my contention is that the said provisions of the constitution have no application to any water except such as the user shall not be deprived of without his consent, and the right to the use of which he may legally demand each and every year, or, as stated in the constitution, annually. The rule laid down by my associates may be just and equitable, but that has nothing to do with my contention.

I therefore concur in the conclusion reached by the majority of the court, that a new trial must be granted in this case.