'(August 6, 1921.)

THOMAS SANDERSON, Plaintiff, v. SALMON RIVER CANAL COMPANY, a Corporation, Defendant.

[200 Pac. 341.]

CAREY ACT PROJECT—WATER RIGHTS—PRIORITIES.

As between contract holders under a Carey Act project, claiming under the same appropriation, who have applied the water beneficially to the land, there are no priorities.

Original *mandamus* proceeding to compel delivery of irrigation water. Application of defendant to amend answer. Granted in part and denied in part.

E. M. Wolfe and J. F. Martin, for Plaintiff.

All contracts sold under the Carey Act and under the contracts with the state are of equal right and of equal priority. (*State v. Twin Falls Canal Co.*, 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *Sanderson v. Salmon River Canal Co.*, ante, p. 145, 199 Pac. 999; *Jackson v. Indian Creek Reservoir etc. Co.*, 16 Ida. 430, 101 Pac. 814.)

Jas. R. Bothwell and Turner K. Hackman, for Defendant.

Richards & Haga, *Amici Curiae.*

The early purchasers could not, without their consent, have their vested rights impaired and diminished until they could neither get title to their lands nor reclaim their lands sufficiently to raise profitable crops.

"No person, company or corporation shall contract to deliver more water than such person, company or corporation has a title to, . . . . " (Sec. 5636, C. S.; *Blakely v. Ft. Lyon Canal Co.*, 31 Colo. 224, 73 Pac. 249; *New La Junta & Lamar Canal Co. v. Kreybill*, 17 Colo. App. 26, 67 Pac. 1026; *La Junta & Lamar Canal Co. v. Hess*, 6 Colo. App. 497, 42 Pac. 50; *Wyatt v. Larimer etc. Irr. Co.*, 18 Colo. 298, 36 Am. St. 280, 33 Pac. 144.)

Water rights cannot be sold beyond the carrying capacity of the system or the available supply. (*Wisconsin Cent. R. R. Co. v. Price County*, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. ed. 687; *Shoshone Mining Co. v. Rutter*, 177 U. S. 505, 20 Sup. Ct. 726, 44 L. ed. 864; *Lewis v. Mountain Home etc. Irr. Co.*, 28 Ida. 682, 156 Pac. 419; *Gerber v. Nampa & Meridian Irr. Dist.*, 16 Ida. 1, 100 Pac. 80; *Bardsly v. Boise Irr. etc. Co.*, 8 Ida. 155, 67 Pac. 428.)

McCARTHY, J.—Following the opinion of this court on plaintiff's motion to strike from defendant's original answer, defendant has applied for permission to amend the answer, to which plaintiff has objected on the ground that the amendment proposed is irrelevant, and does not consti-

tute a defense to the action. The proposed amendment re-
lates to two matters, which we will treat separately. Its
first purpose is to deny that plaintiff owns stock of the
defendant, or of the construction company, or has succeeded
to the interests of Edgar J. Finch in a water contract cover-
ing the land described in the complaint, these matters being
admitted in the original answer. Counsel state that the
admissions were a mistake, accounted for by the haste with
which the original pleading was prepared. We conclude
that this amendment should be allowed.

The second purpose of the amendment is to set up other
rights to the use of the water which are claimed to be prior
to the plaintiff's. That part of the amendment which bears
on this matter is as follows:

"That defendant is further informed and believes, and so
alleges the fact to be, that at the time said Twin Falls Sal-
mon River Land and Water Company executed said water
contracts numbered 1782 and 1783, and pretended to sell to
said Edgar J. Finch a water right for the lands and prem-
ises described in paragraph II of plaintiff's affidavit, the
said Twin Falls Salmon River Land and Water Company
had, prior to the execution of said contracts, to wit, in the
year 1908, made and entered into contracts substantially
similar to plaintiff's Exhibit 'A,' except as to the lands
therein described and the name of the purchaser, with entry-
men and owners of land under its said irrigation project
for an acreage aggregating approximately 70,000 acres, and
had sold water rights in its said irrigation system under
such contracts for approximately 70,000 acres, and by reason
thereof said Twin Falls Salmon River Land and Water Com-
pany had sold all the water available for use under said
irrigation system. That defendant, upon its information
and belief, alleges that the water available for said irrigation
system is sufficient only for the irrigation of about 35,000
acres, and by reason thereof the said Edgar J. Finch and
those claiming under him under said contracts numbered
1782 and 1783 acquired no interest whatsoever in or to the

water available for distribution from said irrigation system. That the purchasers of water rights under contracts entered into prior to May 24, 1910, with said Twin Falls Salmon River Land and Water Company had, prior to 1913, used for agricultural purposes under the sale and distribution of such water under their respective contracts of purchase, entered into prior to May 24, 1910, as aforesaid, all the water available for distribution from said irrigation system, and had settled upon or improved their respective tracts of land for agricultural purposes with the view of receiving the benefit of such water under such dedication, sale and distribution and require all of said water for the proper irrigation of their lands, and any water delivered by this defendant to the said plaintiff under the said contracts numbered 1782 and 1783 will deprive, to that extent, the purchasers of water rights under prior contracts of the water required by such purchasers for the irrigation of their lands.

"That the owners of the water rights purchased as aforesaid prior to May 24, 1910, have, commencing with the year 1911 and ever since, used all the water available from said irrigation system except such amount as may have wrongfully been delivered to the lands described in paragraph II of plaintiff's affidavit, and would have used and applied to beneficial purposes such water if the same had not been wrongfully delivered to said lands now claimed by plaintiff.

"That prior to the irrigation season of 1921, this defendant was managed and controlled by a Board of Directors nominated and elected by the Twin Falls Salmon River Land and Water Company as the holder of proxies under contracts similar to Exhibit 'A' attached to plaintiff's affidavit; that the irrigation season of 1921 is the first irrigation season when this defendant is managed and controlled by a Board of Directors, a majority of which consists of actual water users under this defendant's irrigation system. That the actual water users under this defendant's irrigation system have never recognized the right of plaintiff to water from

said irrigation system, or acquiesced in the delivery of water to the lands described in his said affidavit.''

Before discussing this matter, it is well to recall the gist of the opinion on the first hearing. We held that the complaint showed a right in plaintiff to compel the delivery by defendant of his *pro rata* share of the water, that right being based on his contract, and the dedication of the water to the land by use in the past. We also held that, if defendant could set up facts, which, if true, would give third parties a prior or adverse right to the use of the water, these proceedings should be dismissed, and plaintiff remitted to his bill in equity. (*Sanderson v. Salmon River Canal Co., ante,* p. 145, 199 Pac. 999.) Since then counsel have again urged upon us the theory that, under a Carey Act project, the settler gets no vested right to the use of water until the Secretary of the Interior has decided that a patent should issue to his land. It is claimed that the decisions of the circuit court of appeals in the *Caldwell Case,* 242 Fed. 177, lean to this view. We do not so read them. In any event we do not subscribe to that view. The laws of the state of Idaho govern as to the acquisition of water rights, and the distribution of water on a Carey Act project. To hold that the settler, who, at the invitation of the federal and state governments, goes upon the land, and spends his substance and strength in improving it by the use of the water, obtains no right to its use until and unless the Secretary of the Interior patents the land, would be, to our mind, an unjust rule, and in plain disregard of the fundamental principle of Idaho irrigation law, that one who lawfully makes beneficial use of water upon land acquires a right to its use. (Idaho Const., XV, 4; *Gerber v. Nampa etc. Irr. Dist.,* 16 Ida. 1, at 22, 100 Pac. 80.)

Are the facts set up in the latter part of the proposed amendment relevant and do they present any defense? The point urged is that, even on a Carey Act project, priority of use gives priority of right. C. S., sec. 2998, which was in force throughout the transaction covered by these

pleadings, provides that the rights of a settler on a Carey Act project shall embrace a proportionate interest in the canal or other irrigation works together with all the rights and franchises attached thereto.

"Under the contract the interest of the settler is a proportionate interest in the entire canal system and the water appropriation. If there is a loss, he must stand his proportionate part." (*State v. Twin Falls Canal Co.*, 21 Ida. 410, at 439, 121 Pac. 1039, 1049, L. R. A. 1916F, 236; *State and Rayl v. Twin Falls etc. Water Co.*, 30 Ida. 41, at 59, 60, 166 Pac. 220.) By the terms of the contract between the state and the construction company the latter agrees to sell water rights without preference or partiality other than that based upon priority of application, the water rights having been taken for the benefit of the entire tract of land to be irrigated from the system. The certificate of shares of the capital stock of the construction company, approved by the state, as set forth in the contract between that company and the settler, provides that the certificate entitles him to a proportionate interest in the dam, canal, water rights, and all other rights and franchises of said company, based upon the number of shares finally sold, in accordance with the contract between the company and the state. The theory is that all of the settlers who purchase water rights and apply the water to the land shall be in the same class, without priorities as among themselves, and share alike. We believe this has been the common understanding, relied upon by all, in the settlement of these projects. It is doubtful if the tracts could have been settled at all if that had not been the understanding. The idea of the Carey Act enterprise was to substitute co-operation for individual competition. The contrary view would have caused general confusion, and interminable litigation, and prevented the success of Carey Act projects.

Defendant's counsel argue that the provisions that there shall be no priority among the settlers, and that each has a proportionate interest in the water rights, apply only to a

temporary or seasonal shortage, and not to a case where the water supply turns out to be permanently short of the amount necessary to furnish the contract amount to each settler. The language used in the contracts does not reasonably bear that construction. The question of priorities becomes of practical importance only where the water supply turns out to be permanently inadequate. (*Jackson v. Indian Creek etc. Co.*, 16 Ida. 430, at 439, 101 Pac. 814.) Anybody reading these contracts would reasonably conclude that it is to this condition they refer.

To offset the provisions of the contract, counsel for the defendant rely upon C. S., sec. 5636, which reads as follows:

"5636. Any person, company or corporation owning or controlling any canal or irrigation works for the distribution of water under a sale or rental thereof, shall furnish water to any person or persons owning or controlling any land under such canal or irrigation works for the purpose of irrigating such land or for domestic purposes, upon a proper demand being made and reasonable security being given for the payment thereof; *Provided,* That no person, company or corporation shall contract to deliver more water than such person, company or corporation has a title to, by reason of having complied with the laws in regard to the appropriation of the public waters of this state." (*Gerber v. Nampa etc. Irr. Dist., supra; State and Rayl v. Twin Falls etc. Co., supra.*)

The section does not provide what shall be the result of a violation of its provisions. The principle underlying this section is the basis of the decision on rehearing in *State and Rayl v. Twin Falls etc. Co., supra,* 30 Ida., p. 75, 166 Pac. 222:

"A writ of mandate will not issue from this court to compel a Carey Act construction company to issue shares of stock to a purchaser of state school land where the shares of stock already sold are far in excess of the available water supply and the contract entered into between the construction company and the state of Idaho

was entered into under a mutual mistake of a material fact.

"Where a purchaser of school lands under a Carey Act project could not possibly obtain the amount of water his contract would entitle him to receive, and the issuance of shares of stock to the said purchaser would in effect defeat the rights of prior settlers to the water to which they are entitled under their contracts, a writ of mandate will not issue to compel the construction and canal company to sell shares of stock to said purchaser of school land."

The same principle underlies the decision of the United States district court for Idaho, in the Caldwell case, enjoining the sale of any further contracts by the Twin Falls etc. Company, and also the following Colorado decisions: *Wyatt v. Larimer & Weld Irr. Co.*, 18 Colo. 298, 36 Am. St. 280, 33 Pac. 144; *La Junta etc. Co. v. Hess*, 6 Colo. App. 497, 42 Pac. 50. It does not follow that the provisions of this section, or the principle underlying it, would justify ignoring the contracts and denying the rights of settlers, who have purchased water rights under a contract providing that there shall be no priority as between contract holders, and have applied the water to beneficial use upon the land. It is one thing to prevent any more rights vesting, in order to avoid a hardship to those whose rights have already vested, and it is another thing to wipe out rights which have already vested through the issuance of contracts and the use of the water.

The mainstay of defendant's argument is the Colorado case—*Blakely v. Ft. Lyon Canal Co.*, 31 Colo. 224, 73 Pac. 249. In that case water right deeds were issued by a private irrigation corporation providing that, when the estimated capacity of the canal was disposed of, the title to the canal should pass to the purchasers, who should organize a corporation to take title for their benefit. The court held that the estimated capacity of the canal referred, not only to its carrying capacity, but to the water

right itself, that the contract prohibited the company from selling any more water rights after it had sold rights which would consume all the water available, and that contracts purporting to sell such excess rights were void. The company sold such excess rights in violation of the contract. In an action by the company which took over the title for the benefit of the purchasers, these contracts were cancelled. In response to the suggestion that the purchasers of the excess rights had no notice of the invalidity of their contracts, the court said:

"Conceding, for the sake of argument, that the averments of the complaint bearing directly on this subject are insufficient, it is apparent from the deeds which these purchasers received that they were informed from their several contracts of purchase that it was only rights within the estimated capacity of the canal which the vendor companies had authority to sell. Having received this information from this source, they were put upon inquiry relative to previous sales. Had this inquiry been prosecuted with reasonable diligence, they would have ascertained the true status of the title vested in their vendor, and must therefore be held to have acquired notice of the real fact that the capacity of the canal had been disposed of at the time of their respective purchases. (*Allen v. Moore,* 30 Colo. 307, 70 Pac. 682.)"

The contract in the Blakely case and the contract in the instant case differ in this material respect. The former provided for priority as among the contract holders and the latter provides that there shall be no such priority. It is argued, however, that C. S., sec. 5636, takes the place of the provision in the Colorado contract, that the plaintiff's contract was made in contemplation of that section, and therefore the doctrine of prior rights applies, in spite of the provisions of the contract. We cannot so hold. We conclude that the provision of the contract prohibiting priorities, with knowledge of which, and in reliance upon which, all the rights of the settlers vested, prevents the

application of the doctrine of prior rights as between those who have obtained their contracts, dedicated the water to the land by beneficial use and thus acquired a vested right. It was held in *State and Rayl v. Twin Falls etc. Co., supra,* on rehearing, that the state of Idaho, in dealing with a Carey Act project, acts by virtue of its sovereignty and not in the capacity of a private owner, and that the doctrine of estoppel cannot be invoked against it. This does not apply to the individual contract holders who have applied the water to beneficial use. Having acquired their rights under a contract which provides that there shall be no priorities among them, they are estopped to claim priorities as against each other. There is nothing in sec. 5636, or any other provision of our constitution and statutes, which conflicts with this view. The cause and nature of the difficulty, which has arisen, are summed up in *State and Rayl v. Twin Falls etc. Co., supra,* on rehearing, at 30 Ida. 76, 166 Pac. 232:

"It would probably be sufficient to state that the contract between the state of Idaho and the defendant Construction Company was entered into under a mutual mistake of existing conditions, and upon the assumption that certain facts with reference to the water supply existed, which as a matter of fact do not exist."

The court did not think it just to permit any more rights to be vested to the detriment of those which had already vested. We conclude that it would not be just to divest certain vested rights for the benefit of others. We conclude that the facts sought to be set up in the amended answer in an attempt to show that other settlers on the project, claiming under the same appropriation and the same contract, have rights to the use of water, prior to the plaintiff's, are irrelevant and do not constitute a defense, and that therefore the amendment in those particulars should not be permitted.

Defendant's application to amend its answer is granted as to the second and third paragraphs of the proposed amendment, and denied as to the rest.

Rice, C. J., and Budge, Dunn, and Lee, JJ., concur.