[No. 9706.   Department One.   May 24, 1912.]

HENRY H. LOMBARD *et al.*, *Respondents*, v.
J. J. SCHLOTFELDT *et al.*, *Appellants.*[1]

WATERS AND WATER COURSES—CONVEYANCE—ACTIONS—PARTIES—DEFECT OF PARTIES DEFENDANT. In an action to enforce a contract for the delivery of water by an irrigation company, the contract calling for all water not theretofore sold to others, the parties to the contract are the only necessary parties, there being no defect of parties by reason of the absence of the prior purchasers of water.

WATERS AND WATER COURSES—CONTRACTS FOR WATER—ACTIONS—DEFENSES—FRAUD. In an action to enforce a contract for the delivery of water by an irrigation company, made in consideration of the sale of the stock of the company, the fact of false representations in the sale is no defense, where no damages for loss caused by such false representations are claimed and no rescission of the sale is sought by the defendants.

[1]Reported in 123 Pac. 787.

WATERS AND WATER COURSES—IRRIGATION — WATER CONTRACTS—
QUANTITY OF WATER—LOSSES—CONSTRUCTION OF AGREEMENT. A con-
tract of an irrigation company reciting that it was at one time the
owner of 31 cubic feet of water per second of time appropriated
from the Y. river, and agreeing to deliver all of the same not there-
tofore sold to other parties along an open canal (the amount thus
disposed of being 25.87 cubic feet per second of time), does not con-
vey 5.13 cubic feet of water to be delivered at points distant from
the point of diversion no specific quantity being mentioned, but
covers only such part of the 31 cubic feet appropriated as remained
in the canal at the point of delivery, and could be made to flow by
the exercise of reasonable diligence and care under the existing con-
ditions, after allowing for evaporation, seepage, and other losses.

SAME—ESTOPPEL TO DISPUTE DEED. In such a case, the company,
having executed a deed for the 5.13 cubic feet of water, would not be
estopped to dispute its deed for the 5.13 cubic feet by showing that
there was not sufficient water to supply what had theretofore been
sold to others, where the officers of the company making the deed
had knowledge of the facts, and assumed to act for the company and
caused the deed to be made to a corporation for their own benefit.

SAME — QUANTITY OF WATER — CONSTRUCTION OF CONTRACT. The
fact that the company had since enlarged the canal and added other
waters thereto would not extend the grant of water to be delivered
under the contract.

Appeal from a judgment of the superior court for Yakima
county, Preble, J., entered January 26, 1911, upon findings
in favor of the plaintiffs, in an action to compel the delivery
of water by an irrigation company, after a trial to the court.
Reversed.

*Parker & Richards* and *H. J. Snively*, for appellants.

*Bogle, Merritt & Bogle* and *Englehart & Rigg*, for re-
spondents.

FULLERTON, J.—The appellant Union Gap Irrigation
Company is a corporation, organized under the laws of
the state of Washington, and owns and operates an irriga-
tion ditch, located in Yakima county. The corporation was
organized by the respondents Henry H. Lombard and Frank
Horsley, who, on March 17, 1909, owned its entire capital
stock. On the day named, the respondents Lombard and

Horsley entered into an agreement with the appellants J. J. Schlotfeldt, Charles Cunningham and F. S. Weed, by the terms of which they agreed to sell and transfer to these appellants all of the capital stock of the appellant corporation, for a consideration of ten thousand dollars, first reserving to themselves, by proper transfers from the corporation, all of its assets, water, and water rights not theretofore conveyed to others. The clause of the agreement relating to the water rights reserved is in the following language:

"Fourth: It is further understood and agreed by and between the parties hereto, that whereas the said Union Gap Irrigation Company was at one time the owner of thirty-one (31) cubic feet of water per second of time from the Yakima River, appropriated by it for the purpose of irrigating lands and for stock and domestic purposes, and that whereas, said Union Gap Irrigation Company has heretofore sold to divers other parties certain several amounts of said thirty-one (31) cubic feet of water per second of time, and whereas, said Union Gap Irrigation Company is still the owner of all that part of said thirty-one (31) cubic feet of water per second of time which has not been disposed of as aforesaid, that, prior to the transfer of said stock, it is agreed that the Union Gap Irrigation Company shall transfer and convey to the parties of the first part so much of said thirty-one (31) cubic feet of water per second of time as it owns at the time of the transfer of said stock, and said water so conveyed by said Union Gap Irrigation Company to said first parties shall be delivered in such quantities to said first parties by said Union Gap Irrigation Company, at such point or points along the line of the canal of the Union Gap Irrigation Company as now constructed above and west of the northeast corner of section fourteen (14), township eleven (11), north, range twenty (20), E., W. M., as may be designated by the parties of the first part.

"It is further understood and agreed that in such conveyance of water from said Union Gap Irrigation Company to the said parties of the first part, it shall be agreed between said Union Gap Irrigation Company and said parties of the first part, that the Union Gap Irrigation Company shall charge each year no maintenance fee for any part of said

thirty-one (31) cubic feet of water so conveyed by said Union Gap Irrigation Company to first parties until the same is demanded and actually used by the said parties of the first part, their heirs, executors or assigns. That such water shall, when demanded, be supplied to the parties of the first part, their heirs or assigns, under and subject to all the terms, conditions and limitations contained in the contract and water deed which has heretofore been used by the Union Gap Irrigation Company, and after said water, or any part thereof is demanded and used, it shall thereafter pay the maintenance charge the same as all other water heretofore demanded and used by purchasers of water rights from the said Union Gap Irrigation Company. The amount of water to be delivered and furnished, shall not exceed the rate of 1-100 of a cubic foot of water per second of time for each acre of land irrigated.

"And it is agreed as a part of the consideration hereof, that until all the water to which the parties of the first part are entitled, under this contract, has been demanded, neither the parties of the second part, nor the Union Gap Irrigation Company shall sell or dispose of water rights from the canal of said Company above the northeast corner of said section fourteen, township eleven (11), north, range twenty (20), E., W. M."

Subsequently the respondents ascertained that they had caused the appellant corporation to convey to various users along its ditch water equal to 25.87 cubic feet per second of time, measured at the several points of delivery. They conceived, therefore, that the corporation had remaining undisposed of 5.13 cubic feet of water per second of time, and this quantity they caused the appellant corporation to deed to the respondent corporation Lombard-Horsley Investment Company, the conveyance being made on April 24, 1909. The deed provided that the water conveyed should be delivered to the grantee in such quantities and at such points along the line of the canal of the appellant corporation as might be designated by the grantee. Shortly after the execution of the conveyance, all of the shares of the stock of the Union Gap Irrigation Company were transferred to the appellants

Schlotfeldt, Cunningham and Weed, who paid the consideration for the stock at the time and manner agreed upon in the contract of sale. They also elected themselves trustees of the corporation, and since the transfer of the stock, have had the management and control of the corporation affairs.

After the transfer of the stock, the appellants lengthened and enlarged the ditch, greatly increasing its capacity, and purchased and turned therein additional water amounting to 17 cubic feet per second of time, which it offered for sale beyond the point referred to in the contract of sale as the northeast corner of section 14, in township 11, north, of range 20, east. In the early part of the year 1910, after the ditch had been thus enlarged, the respondents made demand upon the appellants for water pursuant to the terms of the deed, tendering the amount of the annual maintenance fee as therein provided. The appellants refused to furnish the water demanded, and denied the right of the respondents to any water whatever.

The respondents thereupon brought the present action to compel the appellants to deliver to them the quantity of water called for in the deed, at places to be selected by them, and to enjoin the appellants from selling or disposing of water from the canal above the section corner defined in the contract of sale. A demurrer was interposed to the complaint, on the ground that there was a defect of parties to the action, which the trial court overruled. An answer was thereupon filed, the gravamen of which was that the respondents Lombard and Horsley had caused the appellant corporation to oversell its water rights, prior to the time the deed to the Lombard-Horsley Investment Company was executed, and hence the first named corporation had no water which could be conveyed by such deed. Issue was taken upon the answer, and a trial had, which resulted in a decree in favor of the respondents, directing a delivery of the water as demanded. The prohibitory injunctive relief demanded was denied. This appeal followed.

The evidence the court permitted to be introduced, aided by the admissions in the pleadings, tended to show that the canal owned by the appellant corporation was an open canal, some 27.6 miles in length, excavated for a distance of 16.74 miles through a dirt formation, 5 miles through hard pan, 1.7 miles through loose rock, 0.25 miles through solid rock, 0.56 miles through cemented gravel, 0.25 miles through sandstone, and for the remainder of the distance, 3.1 miles, it consisted of flumes built in the ordinary way. It tended to show, also, that the ditch did not itself head at the point of diversion on the Yakima river where the quantity of water the appellants were entitled to take therefrom was measured, but headed in a canal known as the Fowler ditch, at a distance of some twelve miles from the point of diversion. It tended further to show that, prior to the execution of the contract, there had been sold to numerous persons in varying quantities, to be delivered at different points throughout the length of the canal measured at the place of diversion, water to the extent of 25.87 cubic feet per second of time.

The appellants thereupon offered to show that, while nominally there remained 5.13 cubic feet of water per second of time still flowing through the ditch, and subject to be conveyed to the respondents, at the time the deed to the Lombard Investment Company was executed pursuant to the terms of the contract, the fact was that the quantity was much less, owing to the losses occasioned by seepage, evaporation and other causes that could not be prevented, no matter what degree of care might be exercised in keeping the canal in repair. The appellants also offered to show the proximate amount of such losses, contending that their proofs would establish the fact that the quantity of water of the originally diverted 31 cubic feet per second of time capable of being brought from the Yakima river to the users on the canal is less than the amount of water the respondents Lombard and Horsley had caused the appellant corporation to convey to users thereon prior to the execution of the contract between

the individual appellants and respondents.  They also offered to show that the respondents, at the time of the execution of the contract, did not have the right to 31 cubic feet per second of time delivered at the head of the canal sold to the appellants.  Proofs also were offered tending to show that the respondents had made misleading and false representations as to the capacity of the canal.  The court declined to admit in evidence any of the proofs so offered.

Noticing the appellants' assignments of error somewhat out of the order in which they present them, we find no merit in the contention that there is a defect of parties to the action.  Since the action has its foundation in the contract entered into between Lombard and Horsley, on the one part, and Schlotfeldt, Cunningham and Weed on the other, and since each of them still retain the rights affected by the contract, manifestly they are necessary and proper parties to any action having for its purpose the determination of the rights acquired or transferred thereby or pursuant to the mutual covenants and agreements contained therein.  So, likewise, the users to whom the appellant corporation sold water rights prior to the execution of the contract referred to are neither proper nor necessary parties to an action concerning the contract.  Their rights were all acquired prior to its execution, and cannot be disturbed by it, no matter what construction the parties or the courts may put upon it.

Nor did the court err in refusing to permit the appellants to show what representations were made by the respondents concerning the carrying capacity of the canal at the time the contract of sale was entered into.  Such representation, if false, could only be material in case the appellants sought to rescind the contract, or sought damages for losses caused by such false representations, and it is not claimed in any of the pleadings filed by the appellants that they have suffered damages because of such false representations, nor do they seek a rescission of the contract.

But we think the court erred in refusing to permit the ap--

pellants to show what portion of the water the appellants were entitled to divert from the Yakima river could be delivered through the canal to the users of water along the line of the canal. By the express terms of the contract of sale which we have quoted, it is provided that only so much of the thirty-one cubic feet of water per second of time as the Union Gap Irrigation Company had not disposed of to users along the canal prior to the execution of the contract should be conveyed to the respondents. No specific quantity was mentioned or agreed upon; it was only the water remaining after the part sold to such users had been deducted that the Union Gap Irrigation Company could be required to convey. As the contract was made with reference to existing conditions, it was a part of its terms, also, implied if not expressed, that the water was to be carried from the place of diversion to the place of delivery in the future as it had been in past, namely, in an open canal. It was known to the parties, since it was a matter of common knowledge, that the full quantity of water taken at the place of diversion could not be delivered to consumers along the line of the canal; that owing to evaporation, absorption, and seepage, a considerable quantity of the water diverted would be lost before it reached the place of consumption, no matter what degree of care might be exercised in keeping the canal in repair; and hence it was known that it would take more than 26.87 cubic feet of water per second of time at the point of diversion to supply the 26.87 cubic feet of water per second of time sold to be delivered along the line of the canal. It follows that at the time of the execution of the deed under which the respondents claim, there did not remain in the canal subject to delivery the amount of water called for therein, and that the deed conveyed a greater quantity of water than could be delivered without trenching upon the rights of persons holding conveyances prior in time. This clearly was not within contemplation of the parties at the time the contract was entered into, and in our opinion not within the contract itself. While

its language is not as definite as it might have been made, as we have said, it nowhere specifically provided that there should be conveyed to the respondents 5.13 cubic feet of water per second of time, and the equities of the case does not require that its language be given that effect. We conclude, therefore, that the deed should be construed as a deed conveying only such quantity of water as could be made to flow into the canal by reasonable diligence and care out of 31 cubic feet per second of time, from the point of diversion on the Yakima river, after deducting therefrom the amount sold to consumers prior to the execution of the contract, namely 25.87 cubic feet of water per second of time delivered along the line of the canal, and that the appellants should be permitted to show the specific amount thereof, as near as may be.

The appellants are not estopped by the covenants in the deed of conveyance from showing the fact. Had the contract permitted the sale to be made to strangers, and the conveyances had been made to persons without knowledge of the existing contract, an action could, perhaps, be founded on the covenants of the deed in case the water was not delivered. But not so with the respondents. They were entrusted to exercise the functions of the corporation themselves, and if they caused it to convey something it did not own and which they had no right to cause it to convey, they can acquire no rights thereunder. To allow them to do so would be to allow them to profit by their own wrong.

Nor does the fact that the appellants have enlarged the canal since the contract was entered into, and have purchased and turned therein an additional quantity of water, and can now in fact deliver the additional quantity so sold by reason thereof, make any difference in the rights of the parties. The enlargement of the canal and turning additional water therein was a voluntary act on the part of the appellants, at least, in so far as the rights of the respondents are concerned. Being a voluntary act, the respondents cannot, of course, compel them to keep the additional water therein; on the

'contrary, they may turn it out again or otherwise appropriate it without hindrance from the respondents. The respondents' rights extend only to such portion of the 31 cubic feet of water per second of time diverted at the Yakima river as can be delivered to users along the canal by the exercise of reasonable care in keeping the same in repair. They have no rights in water that may be turned into the canal in addition thereto.

The judgment appealed from is reversed, and the cause remanded for further proceedings in accordance with this opinion.

DUNBAR, C. J., MOUNT, PARKER, and GOSE, JJ., concur.