(April 2, 1923.)

STATE and GEORGE W. RICE, Respondents, v. TWIN
FALLS LAND & WATER COMPANY, a Corporation,
and TWIN FALLS CANAL COMPANY, a Corpora-
tion, Appellants.

[217 Pac. 252.]

CAREY ACT—CONTRACT BETWEEN STATE AND CONSTRUCTION COMPANY—
WHEN SALE OF ADDITIONAL WATER RIGHTS WILL NOT BE EN-
FORCED—CLASSES OF LAND WATERED—NO PREFERENCE EXCEPT
PRIORITY—EFFECT OF ACCEPTANCE OF SYSTEM BY STATE—WHEN
LANDS NOT SUSCEPTIBLE OF IRRIGATION—OBLIGATIONS OF OPER-
ATING COMPANY.

1. Where a contract between the state and a Carey construc-
tion company provides that in no case will water rights or shares
be dedicated to any of the lands in said system, or sold, beyond
the carrying capacity of the canal, or in excess of the appropria-
tion of water, neither the construction company nor the operating
company can be required to sell additional rights after the carry-
ing capacity of the system or the appropriation has been sold
to prior users.

2. Where a contract between the state and a Carey construc-
tion company stipulates that to the extent of the capacity of the
irrigation works and of its appropriation of water, and as
rapidly as lands are opened for entry and settlement, sale will be
made without preference or partiality other than that based upon
priority of applicants, no preference exists in favor of any class
of lands to be watered under such system.

3. Where one who has purchased school lands from the state
which are within the limits of a Carey Act segregation, but fails
to purchase a water right for such lands in the canal system
until all the water that can be delivered by such system has
been sold to prior purchasers, a writ of mandate will not lie
to compel either the construction company or the operating com-
pany to sell additional water rights, since such order would
operate to deprive those having prior rights of the amount of
water to which their contracts entitle them.

Publisher's Note.
1. Construction of particular provisions of irrigation contracts
under the Carey Act, see note in **L. R. A.** 1916F, 260.

4. Where a Carey construction company contracts with the state to construct an irrigation system within a given time and according to plans and specifications made a part of the agreement, and the state accepts such system as being completed and requires the construction company to convey its interest to the operating company, after such transfer neither the state nor one claiming under it, in the absence of mistake on the part of the state or fraud on the part of the construction company in inducing the state to accept the same as complete, can require the operating company to extend such system to water additional lands which are not susceptible of being irrigated by the system as the state accepted it from the construction company.

5. Where the agreement between the state and a Carey construction company is accompanied by plans and specifications which are made a part of such contract, and from the same it appears that neither party to the agreement contemplated or understood that any lands were to be reclaimed by said system except by gravity, a purchaser of state lands, known by himself and the state to be so situated that water to reclaim them must be lifted by a pumping system or some other method, the cost of which will greatly exceed the entire purchase price received from the sale of such water right, neither the construction company nor the operating company will be required to deliver water to such lands.

APPEAL from the District Court of the Eleventh Judicial District, for Twin Falls County. Hon. Wm. A. Babcock, Judge.

Application to district court for writ of mandate. From judgment for plaintiffs, defendants appeal. *Reversed* and *remanded,* with instructions.

Sweeley & Sweeley, for Appellant Twin Falls Land & Water Co.

The land for which a water right is claimed is a part of school section 36 and the right to have water sold to become appurtenant to it was settled by this court in the case of *State and West v. Twin Falls Canal Co.,* 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236.

A. A. Fraser and James R. Bothwell, for Appellant Twin Falls Canal Co.

The answer in this case having explicitly set up the fact that all the waters to the full capacity of the canal have been for more than five years appropriated and placed to a beneficial use by the present stockholders of the company, a writ of mandate will not issue where it might have the effect of depriving the prior users of water of a portion of the waters to which they are entitled and which are necessary to the proper irrigation of their lands. (*Sanderson v. Salmon River Canal Co.*, 34 Ida. 303, 200 Pac. 341; *State v. Twin Falls etc. Water Co.*, 30 Ida. 41, 166 Pac. 220; *Furbee v. Alexander*, 31 Ida. 738, 176 Pac. 97; *Evans v. Swendsen*, 34 Ida. 290, 200 Pac. 136; *Wyatt v. Larimer & Weld Irr. Co.*, 18 Colo. 298, 36 Am. St. 280, 33 Pac. 144.)

Under the contracts pleaded and set forth in the plaintiff's complaint the only waters in which the plaintiff could possibly have any interest would be in the first appropriation of 3,000 cubic feet. (*Lombard v. Schlotfeldt*, 68 Wash. 518, 123 Pac. 790.)

The irrigation works, which it was proposed to construct and which were constructed for the irrigation of this Carey Act segregation, was and is what is known as a gravity system, and it was not the intention of the makers of these contracts to extend laterals for an indefinite distance in order to cover the high lands within said segregation. It would result in confiscating this defendant's property without due process of law. (*Murray v. Public Utilities Com.*, 27 Ida. 603, 150 Pac. 47; *Lukrawka v. Spring Valley Water Co.*, 169 Cal. 318, 146 Pac. 640; *Lawrence v. Richards*, 111 Me. 95, 88 Atl. 92.)

A. H. Conner, Attorney General, and Jas. L. Boone, Assistant, for Respondents.

All purchasers of school lands within the Twin Falls South Side Project and under the irrigation system of the Twin Falls Land & Water Co. and Twin Falls Canal Co. are

entitled to demand and receive water from the above companies for use on such lands so purchased. (*State v. Twin Falls Canal Co.*, 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236; *State and Weaver v. Twin Falls Canal Co.*, 27 Ida. 728, 151 Pac. 1013.)

The cases of *State and West v. Twin Falls Canal Co.*, *supra*, and *State and Weaver v. Twin Falls Canal Co.*, *supra*, are *res adjudicata* of the questions raised in this case.

A judgment is conclusive not only upon those who were actual parties to the litigation but also upon all persons who are in privity with them. (*Smith v. Kessler*, 22 Ida. 589, 127 Pac. 172.)

"A permissive right cannot ripen into a prescriptive right." (2 C. J. 131, sec. 226; 19 C. J. 887, sec. 53; *Davis v. Devanney*, 7 Ida. 742–745, 65 Pac. 500.)

The canal company cannot raise the question of the failure of the construction company to complete the irrigation system in accordance with its contract. (*State and Weaver v. Twin Falls Canal Co.*, *supra*.)

WILLIAM A. LEE, J.—This is an appeal from a judgment of the district court of the eleventh judicial district, awarding a writ of mandate to respondent George W. Rice, commanding appellants to forthwith enter into a contract with respondent to sell him a water right for certain lands which he had purchased from the state, this right to be out of the Twin Falls Canal Company's system, and to be furnished according to the terms and conditions of a contract between appellant Twin Falls Land & Water Company and the state of Idaho, made January 2, 1903. The writ directs that this sale contract shall not contain any reservations or restrictions other than those provided for in said contract of January 2, 1903, that appellants must construct the additional extensions to said system necessary to deliver water within one-half mile of the place of intended use, at a point available for delivering the same upon respondent's land by gravity, and issue stock to respondent in the Twin Falls Canal Company, which stock shall be subject only to the

usual charges and assessments levied against the other users of water under this system.

The affidavit for the alternative writ does not allege that appellants have sufficient water to supply respondent with the water as prayed for, or that this canal system has a carrying capacity sufficient to deliver this water, in addition to the water required to supply prior users upon this project. A writ of mandate will not usually be granted to compel the delivery of water unless the affidavit alleges that defendant has under its control sufficient water to supply the rights of plaintiff, in excess of the amount necessary to supply users whose rights are prior in time. (*Gerber v. Nampa etc. Dist.*, 16 Ida. 1, 100 Pac. 80; *Lewis v. Mountain Home etc. Dist.*, 28 Ida. 682, 156 Pac. 419; 3 Kinney on Irrigation and Water Rights, 2d ed., sec. 1649, p. 3024.)

To this application appellant corporations severally answered, and to these respective answers respondents demurred generally and moved to strike all the material averments therefrom. Respondents' demurrers and motions to strike were sustained, and appellants refused to plead further. Default was entered for such failure, and judgment awarding the writ as prayed for was granted against each of said appellants, from which this appeal is taken.

The demurrers and motions to strike the several answers of appellants having been sustained, all of the material averments well pleaded therein are to be taken as true for the purposes of this action, and accordingly the facts of this case upon this record are as follows: Appellant Twin Falls Land & Water Company is a Utah corporation, authorized to do business in the state of Idaho. In October, 1900, it filed with the state board of land commissioners a proposal to construct a certain irrigation system in what were then Cassia and Lincoln counties, in accordance with the provisions of the act of Congress known as the Carey Act (28 Stats. L. 422 [U. S. Comp. Stats., sec. 4685], and the acts amendatory thereof) and the laws of the state of Idaho which accepted the provisions of the Carey Act (C. S., sec. 2996 et seq.). Upon this proposal the state applied to the government for

conditional withdrawal of these lands under other federal laws, and they were segregated to the state to be reclaimed under the said Carey Act. On July 1, 1901, Idaho List No. 6 was filed in the United States land office at Hailey, describing these lands by legal subdivision. On January 2, 1903, the state, as first party, through its state board of land commissioners, entered into a contract with appellant Twin Falls Land & Water Company, hereinafter designated the construction company, whereby it was agreed that this company should construct an irrigation system to divert water from the Snake River, the point of diversion being near the southeast corner of sec. 29, T. 10 S., R. 21 E., B. M., at what is now the Milner Dam. This contract, with the accompanying plans and specifications which were made a part of it, provided for the construction of a dam, main canal and subordinate laterals, with the necessary weirs and distributing gates, at an estimated cost of a million and a half dollars. It recites that the state engineer had issued to this company a permit to construct said irrigation works to divert and appropriate and use from the waters of Snake River 3,400 second-feet for irrigation, power and other beneficial uses, from October 8, 1900. Attached to this contract with the state and as a part of it was a map descriptive of the canal system and the lands to be watered by it, which included the lands segregated by the government to the state in said Idaho List No. 6, with other state and private lands lying and being below the general grade line of this system, which were described as susceptible of being reclaimed by it.

There is nothing in the record indicating that either party to the agreement contemplated or understood that the lands embraced within this system were to be reclaimed otherwise than by gravity. The school lands described in respondents' application for this writ were included within the exterior limits of the construction company's original application to the state for a segregation, and were also described in a decree in an action entitled *Twin Falls Canal Co. v. Foster et al.*, entered in June, 1913, in what was then the fourth judicial district court, whereby the title to 3,000

cubic feet of water per second of time out of the waters of Snake River appropriated by the construction company October 8, 1900, was quieted in said company and its successors in interest, and 400 feet to the North Side company, whose interests are not here involved.

The contract between the state and the construction company of January 2, 1903, provided that the state would not approve any applications for filings upon any of these segregated lands until the applicant had purchased sufficient shares of water in this system to irrigate the lands applied for, and the construction company agreed that to the extent of the capacity of the system, and as rapidly as lands were opened for settlement and entry and filed upon by qualified entrymen or by purchasers of water rights for other than segregated lands, it would sell such water rights without preference or partiality, other than that based upon priority of application. Each of said shares of water right to be sold should represent a carrying capacity in the canal sufficient to deliver water at the rate of one-eightieth of a second-foot per acre, and conveyed to the purchaser a proportionate interest in said system, based upon the number of shares finally sold in the entire system, with all rights and franchises. This contract further provided that in no case should water rights be dedicated to any of said lands or sold beyond the capacity of the canal system, or in excess of the appropriation of water therein mentioned.

The construction company was also required to organize a company to be known as the Twin Falls Canal Company, which will hereafter be referred to as the operating company, and upon the completion of the system by the construction company, which was to be within seven years from the date of the contract, with the consent and approval of the state board, the construction company was required to convey to said operating company the entire water system and all water rights and franchises connected therewith, free from debt. All contracts for the sale and purchase of water previously made with settlers under said system were to be re-

placed with shares of stock in said operating company, from and after the date of its formation, and thereafter water rights were to be represented by stock in this operating company.

A water right in this system represented one-eightieth of a second-foot per acre, and the main canal had, or was required to have, a carrying capacity sufficient to deliver water during each and every irrigating season in this amount to every user thereunder, to be measured within one-half mile of the place of intended use, in such quantities and at such times as the conditions of the soil, crops and weather might determine. The sale and purchase of water rights was to be a dedication of the water so purchased to the land to which it was to be applied, and was to be a part of and relate to the water right belonging to said canal system. All deeds for water right or other conveyances of the same were required to be based upon and governed by said contract between the state and the construction company of January 2, 1903.

The construction company completed this canal system according to the requirements of its contract, and the state approved and accepted the system as complete in September, 1909. The construction company transferred to appellant operating company all the remaining unsold shares of water right, with all of its interest in the system, in accordance with its said agreement with the state and a written agreement between the two companies further defining their respective interests in the unsold shares, all of which was done with the approval of the state. Since this time the possession, ownership, maintenance and control of this system have been exclusively in the appellant Twin Falls Canal Company.

It has been found from actual use and application of water to these lands that are now being watered from this system, for a period long prior to the commencement of this action, that the apportionment of one-eightieth of a second-foot per acre is insufficient for the successful irrigation of

these lands, to which all of the available water supply from the construction company's appropriation of October 8, 1900, is apportioned, and the stockholders, who are the water users, acting through this operating company, have been required to supplement the available supply furnished by said original appropriation by the purchase of 96,000 acre-feet from the stored waters of the government in Jackson Lake.

It also appears that from the original appropriation of 3,000 second-feet made by the construction company, the operating company has frequently been unable to obtain this amount by reason of prior appropriations and diversions from the Snake River; that not to exceed 2,100 second-feet is the maximum that can be obtained during a large part of the average irrigating season; that the water users in this system, acting through said operating company, have been required to expend more than $200,000 to construct a reservoir to impound the flood waters of Snake River to supplement their water supply, in order to enable the operating company to divert and distribute to its present stockholders the amount necessary to irrigate and reclaim their lands; that such expenditure has been made by the present stockholders in order to provide them with sufficient water during the ordinary low-water season; and that there is now being watered under this system 203,620.68 acres of land, a major portion of which is land segregated to the state by the government. It also appears from the answers that the state, in order to obtain patents for said Carey entrymen, was required, and did, submit proofs that there was an ample supply of water to furnish a second-foot to each eighty acres of land so patented; that the government was induced to patent this land to the state in trust for the settlers without any knowledge that a claim would be made by the state for water for its lands, in such manner or to such an extent that there would not be the amount represented by the state as available for these Carey lands; that a like representation was made to the entrymen to induce

37 Idaho.—6

settlement upon and reclamation of these lands; that it was represented to these settlers that they would be entitled to and would receive by virtue of their ownership of stock in the operating company a second-foot of water for each eighty acres of land, or five-eighths of a miner's inch for each acre; and that the settlers relying upon this representation have been induced to settle upon these lands and expend large sums in developing them.

The answer of the operating company also alleges that at no time has this canal system ever been able to deliver more than 2,100 second-feet of this water to the respective lands upon which the same is being used, because of loss in transmission; that not more than 168,000 acres of land can be watered at any one time; that it is necessary to adopt the most efficient and economical method of delivery in the operation of said system in order to raise such agricultural crops as are ordinarily produced in this locality; that the contracts provide that water rights should not be sold beyond the carrying capacity of the canal; that to issue additional stock in said operating company or to permit other and additional rights to be sold will prevent the present holders from receiving the amount of water they are entitled to receive under the terms of their agreement.

The operating company further alleges that it is a domestic corporation, created to take and hold title to and operate the dams, canals, laterals and other works built by the construction company, known as the Twin Falls South Side Project, to acquire, hold, maintain and distribute among its stockholders, equally and ratably, the water diverted by said system from Snake River, and to do such other things as may be necessary in the maintenance and operation of said system; that it was not the purpose or intent of either the state or said construction company, nor does said contract require, said operating company to extend such system so as to water other and additional lands that were beyond and outside the area of lands susceptible of being watered when the same was accepted by the state and transferred by said construction company to the holding company.

It appears from both the complaint and answer that the lands of respondent Rice cannot be watered from this system as now constructed. There are two possible ways of reaching this land; first, the instalation of a pumping plant in Lateral No. 9 of the 4th Division, at a point 1,700 feet east of the center of the N. E. ¼ of the N. E. ¼ of sec. 36, T. 9 S., R. 13 E., B. M., and the construction of a pipe-line therefrom for a distance of 1,700 feet to the center of said quarter-section, the water when so delivered to be lifted to a height of seventy-five feet, which will require an expenditure of $2,000 for a pipe-line to carry said water to the place of intended use and an additional $2,000 for a pumping plant, switchboard and transformer, as well as the employment of a man to operate said pumping plant during the entire irrigating season; or in lieu of this plan, it will require a pipe-line to be constructed from Lateral No. 6 of the 4th division to a point south of the center of the N. E. ¼ of said sec. 36 for a distance of 12,100 feet, and it will cost to install the same complete approximately $18,930.45.

The operating company alleges that all this was well known to the state when it accepted the system as complete from the construction company in 1909, that it was well known to respondent Rice when he purchased this land, and that in no event is an operating company to be bound to extend a system after it has been accepted by the state from the construction company as completed.

The operating company says that to grant this writ will impair the obligations of the settlers' contracts with the state, since it compels them to extend the system for the benefit of subsequent purchasers. The construction company contends that since it completed the system and the state accepted it as complete and required it to turn the same over to the holding company, with all of its right, title and interest therein, this constitutes a valid waiver on the part of the state to now demand that it shall retake possession of the system and extend the same to water additional lands. The operating company contends that the only purpose for which it was created was to take over the system

after it had been acccpted as complete by the state, and to operate the same for the benefit of the respective water users thereunder; that these water users now have a vested right as tenants in common in the system as completed by the construction company and accepted by the state in the system itself, and that such ownership does not contemplate or require that the system be further extended to water additional state lands or any lands at the expense of the present owners; that its stockholders, who have used this water continuously, uninterruptedly and adversely, under a claim of right, for a period of more than five years, have a right to the use of such water as against all other subsequent appropriators or proposed users that is a vested right, of which they cannot be divested; and that to now permit additional rights to be sold in this system would be in violation of the eighth paragraph of the contract between the state and the construction company of January 2, 1903, whereby it is expressly agreed that:

"But in no case will water rights or shares be dedicated to any of the lands aforementioned or sold beyond the carrying capacity of the canal system, nor in excess of the appropriation of the water as hereinbefore mentioned."

The operating company in effect further alleges that it has been required to supplement the water supply of its users by constructing at their expense of $200,000 a reservoir to impound an additional supply during the flood water season, and also to purchase 96,000 acre-feet of water impounded by the government in Jackson Lake; that it would be inequitable to require further sales of water from this system after the lapse of from five to eighteen years since the users purchased their rights and began the use of the same, and twelve years since the state accepted the system as complete; that all the water appropriated by the construction company has for more than five years been appropriated and beneficially used upon the lands of its stockholders; that the diversion and application of such water to these lands requires the full carrying capacity of this canal system as it was completed and accepted by the state; that

the issuance of further rights out of this appropriation, to be delivered out of this system, will deprive these prior users of the water which under their contracts they are entitled to receive, and which they have received and used openly, notoriously and adversely, under a claim of right, for more than five years; and that this amount is necessary for the irrigation of their lands. This directly challenges the right of respondents and of all other subsequent applicants to the use of any part of this water.

It cannot be presumed that the present users of water under this system, when they acquired their rights to its use, intended or understood that they were to receive only an indefinite fractional part of this original appropriation of 3,000 second-feet, instead of the definite, specific quantity mentioned in the granting clause of their contracts. Such meaning is clearly contrary to the language used. If the state, which subject only to the limitations of law had plenary power to fix the terms and conditions of these contracts between the construction company and the settler, intended that he should have only a fractional, indefinite and uncertain amount of this appropriation that might remain after all subsequent purchasers of lands lying within the exterior boundaries of the segregation had been granted similar rights, it should have made this condition of the contract clear and unequivocal. Instead of doing so, it was made to read as above stated. C. S., sec. 5636, then in force as R. C., sec. 3289, prohibits any person, company or corporation from contracting to deliver more water than such person or company has title to. All contracts made pursuant to Carey Act law, either state or federal, must be construed in harmony with such acts and all other general laws relevant to the appropriation and use of water. The state land board is without authority to authorize a construction company to sell settlers under a Carey Act project an indefinite, fractional water right, but is required to limit such sales to the amount of water available from the company's appropriation which can be seasonably delivered by the proposed system.

In view of all the facts alleged in the several answers of the appellant companies, which respondents' demurrers and motions to strike admit to be true, a court cannot assume as a matter of law that there still remains out of this appropriation water that can be delivered to respondent Rice, the delivery of which will not deprive present stockholders of water they are entitled to receive. It cannot be contended that respondents are entitled to share in this additional appropriation since acquired by the stockholders of the operating company. Where a part of the owners of a canal system purchase and turn therein an additional quantity of water, it does not give other users of such system a right to the use of the additional water. (*Lombard v. Schlotfeldt*, 68 Wash. 518, 123 Pac. 787.)

Respondents in support of their application for this writ rely largely upon the authority of *State and West v. Twin Falls Canal Co.*, 21 Ida. 410, 121 Pac. 1039, L. R. A. 1916F, 236. That was an original application to this court for a writ of mandate to require these same defendants to issue water stock to plaintiff West, who was also a purchaser of state school lands lying under the gravity line of this system, decided in June, 1911, reheard, and the writ allowed by a divided court. It appears that the conclusion arrived at in the majority opinion was based upon assumed conditions widely at variance with what the facts are conceded to be in case at bar. It is there said:

"By using what is known as the 'coulee' system, much of the waste water of this entire system may be utilized over and over again, thereby largely offsetting canal losses by evaporation and seepage. . . . . If that contention be correct, the said system would have water sufficient to give a continuous flow of one-eightieth of a second-foot of water to every acre of land within said project that is used for raising crops, and the engineers in designing the said irrigation system may have used this method of figuring as an offset to the seepage and evaporation losses."

In the later case of *State and Rayl v. Twin Falls Salmon River Land & Water Co. et al.*, 30 Ida. 41, 166 Pac. 220,

where a somewhat similar question was presented, this court, speaking through Sullivan, C. J., who had also written the opinion in the West case, *supra,* said that neither that case nor the later case of *State and Weaver v. Twin Falls Canal Co.,* 27 Ida. 728, 151 Pac. 1013, which followed the West case, had any application to an action where the water supply is inadequate or insufficient, and that:

"Since the state and Rayl knew that the water supply was insufficient at the time said state land was sold and purchased . . . . the state is not entitled to a priority of right for any of said water for the land sold to Rayl.

"The theory of 'proportionate share' of the water appropriated ought not to be adopted in this case. . . . . It is not true that the contract for the state for water to reclaim the school lands is of any higher order than the contract of the settler with the construction company for water to reclaim the Carey Act land which he purchased from the state. . . . . The state as well as Rayl knew when Rayl purchased said school lands that the water supply had long prior to his purchase been exhausted. . . . . Rayl is in no better position than the state."

Upon rehearing, this court, speaking through Rice, J., said:

"Where a purchaser of school lands under a Carey Act project could not possibly obtain the amount of water his contract would entitle him to receive, and the issuance of shares of stock to said purchaser would in effect defeat the right of prior settlers to the water to which they are entitled under their contracts, a writ of mandate will not issue to compel the construction company and canal company to sell shares of stock to said purchaser of school lands."

This holding was approved in *Sanderson v. Salmon River Canal Co.,* 34 Ida. 303, 200 Pac. 341.

The rule of law as announced in the foregoing cases is equally applicable to case at bar.

In reply to respondents' contention that the decree in the case of *Twin Falls Canal Company v. Foster et al.* having

described this school land, this amounted to a dedication of a proportionate amount of water to such lands, it is sufficient to say that a blanket decree awarding 3,000 second-feet of water from Snake River, to be delivered through the "Twin Falls South Side canal, for use upon the lands lying in Twin Falls County, Idaho, south of the Snake River and east of the Little Salmon River," thereafter designating these lands either by township or section numbers, is not such a perpetual dedication of this water to each several legal subdivision, irrespective of whether it was waste or agricultural land or land that can be reclaimed under this system, that it resulted in divesting actual settlers under the system of prior rights, when they were not parties to the action.

We conclude, and so hold, that the law of this case, upon the record here presented, is as announced in the five paragraphs of the syllabus, and that the cause should be reversed and remanded, with instructions that if the respondents so elect, the court may overrule their demurrer to the several answers of appellants and the motion to strike said answers, and the cause may be heard upon any of the issues of fact thus tendered by such answers, not inconsistent with this opinion. Otherwise the writ shall be quashed and the action dismissed, in either event appellants to be allowed the costs of this appeal.

Budge, C. J., and McCarthy, Dunn and Wm. E. Lee, JJ., concur.

Petition for rehearing denied.