GLAVIN et al. v. COMMONWEALTH TRUST CO. OF PITTSBURGH.

(Circuit Court of Appeals, Ninth Circuit. January 21, 1924. Rehearing Denied March 3, 1924.)

No. 4086.

Waters and water courses ⬱258—Purchase price of water held to bear interest at agreed rate.

In a suit to foreclose a lien, under Act June 11, 1896 (Comp. St. § 4686), for a supply of water, *held*, that the purchase price of the water should bear interest at the rate specified in the contract, though, due to an erroneous estimate of the supply available defendant had received only 76 per cent. of the amount of water contracted for; that being the same proportionate quantity received by all other irrigators under the system in question.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Commonwealth Trust Company of Pittsburgh against R. Glavin and another. Decree for complainant, and defendants appeal. Affirmed.

John W. Graham, of Twin Falls, Idaho, and Alfred A. Fraser, of Boise, Idaho, for appellants.

Oliver O. Haga, McKeen F. Morrow, J. L. Eberle, and Chas. H. Darling, all of Boise, Idaho, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge. The assignment of errors upon which the appellants rely is as follows:

"The court erred in allowing the plaintiff interest from April 1, 1911, at the rate of 8 per cent. per annum upon the water contracts or water rights sought to be foreclosed in this action:

"First. For the reason that said water contracts and each of them contained a provision as follows: 'All interest accruing prior to the date notice is given to the entrymen that the company is prepared to furnish water under the terms of this contract is hereby waived.' The evidence in the case conclusively establishes the fact that the company was never at any time prepared to furnish water under the terms of said contract.

"Second. For the reason that the evidence establishes the fact that plaintiff's claim against said defendants was unliquidated and uncertain, and not capable of computation by fixed values or prices, and that by reason thereof the defendants, prior to the entry of the decree herein were unable to tender or pay to the plaintiff an amount certain or definite and stay the running of interest upon said contracts.

"Third. If the plaintiff was entitled to any interest upon these contracts, the rates should have been 8 per cent. per annum, as called for by the terms of the water contracts and the court erred in allowing interest at any greater rate."

The liens sought to be foreclosed by the suit and which were foreclosed by the decree appealed from were authorized by the Act of Congress of June 11, 1896 (Comp. St. § 4686)—the case growing out of the establishment and construction of an irrigation system known as the "Salmon River project," under and in pursuance of the Act of Congress approved August 18, 1894 (28 Stat. 372, 422 [Comp. St. § 4685]), and amendments thereto, known as the Carey Act, and of certain legislation of the state of Idaho. The history of the project

and the numerous and complicated facts connected with the undertaking were fully set out in the opinions of this court rendered in cases heretofore brought here, namely, Twin Falls Salmon River Land & Water Co. v. Caldwell, 242 Fed. 177, 155 C. C. A. 17; Twin Falls Oakley Land & Water Co. v. Martens (C. C. A.) 271 Fed. 428, and Twin Falls Salmon River Land & Water Co. v. Caldwell (C. C. A.) 272 Fed. 356.

In the Martens' Case, 271 Fed. 428, while this court held that the liens created by the Idaho statute, acting under the authority conferred by the amendment to the Carey Act approved June 11, 1896 (29 Stat. 413, 434), are founded upon the contract for the water right, and that the right of foreclosure upon default must be "according to the terms and conditions of the contract granting and selling to the settler the water right," yet that where the furnishing "company failed to deliver a quantity of water sufficient to comply with its contract and to enable the defendant to reclaim his land, it cannot rely upon the contract as ground of foreclosure for the full amount of deferred payments." But we further said that where as in that case—

"defendant has had the use of a substantial quantity of water furnished by the company since 1913, and although such quantity is less than he was entitled to have, and less than his land required for good husbandry, still it was furnished to him, and used by him according to the general provisions of the contract, and in view of his default in payments he ought not to be permitted to defeat foreclosure of the lien to an extent commensurate with the quantity of water furnished; hence a decree that, inasmuch as defendant will only receive seven-ninths of the water agreed to be furnished, the lien should be foreclosed accordingly, and that the settler should only be required to pay seven-ninths of the contracted for price is equitable and proper."

In the preceding case, reported in 242 Fed. 177, in explaining the scheme devised to take the benefit of the congressional grant, we said, among other things:

"The construction of the system necessarily required the furnishing from some source of the money with which to do the work; the compensation to the construction company for the liability assumed by it in procuring the required money and in doing the work must of necessity come from the sale of the lands and of rights to the appropriated water; and of that fact both Congress and the state were, of course, well aware, as is shown by the legislation that has been referred to. In the execution of the project, the contract between the state and the construction company, and the contract between that company and the settlers, were made. Manifestly, they are to be read together and in connection with the statutes of Congress and of the state, to which the contracts expressly referred. The construction company, the settlers, and the parties who furnished the money for the building of the system, receiving as security therefor the liens authorized both by Congress and the state, are therefore, each and all, charged with full knowledge of the laws and of the provisions of the contracts. The difficulties that have arisen grow out of the fact, discovered, unfortunately, too late, that, instead of the appropriation of the waters of the stream amounting in fact to 1,500 cubic feet per second, the supply, as shown by the record and according to the practical concession of the parties, was only about one-third of that amount—wholly insufficient for the reclamation and irrigation of the entire tract segregated by the Secretary of the Interior, and also insufficient, it is claimed, for at least the proper irrigation of all of the lands covered by contracts of sale actually issued by the construction company to settlers."

The issues made by the pleadings in the present case are narrow and simple. According to the allegations of the bill, the lands against which

the appellee sought to foreclose its alleged liens, and the amount thereof at the price specified in the settlers' contracts remaining unpaid against each legal subdivision, are as follows:

"SW¼ SE¼ of section 9, township 11 south, range 16 east; number of shares dedicated to said lands, 40; amount due on principal $1,480, with interest thereon from the 1st day of April, 1911.

"S.W¼ NW¼ NW¼ SW¼ of section 10, township 11 south, range 16 east; number of shares dedicated to said lands, 80; amount due on principal, $2,-900 with interest thereon from the 1st day of April, 1911.

"NW¼ SE¼ NE¼ SE¼ of section 9, township 11 south, range 16 east; number of shares dedicated to said lands, 80; amount due on principal, $2,-800, with interest thereon from the 1st day of April, 1911."

And the appellee alleged that, according to the terms of the appellants' contracts, the aforesaid sums bear interest at the rate of 8 per cent. per annum. It is not denied that by the terms of the contract the rate of interest was fixed at 8 per cent. per annum, but the defendants to the suit set up by answer that the amount of water to which, under the contracts, they were entitled was 2¾ acre feet per acre, and here insist that they should not be required to pay any interest until that amount of water is so furnished them, and in no event should they be required to pay interest in excess of 6 per cent. per annum.

The contracts provided for interest at 8 per cent. per annum from the date on which the statutory notice is given that the company was prepared to furnish the water, and the plaintiff alleged that due notice was given that water would be available on and after April 12, 1911. The defendants by their answer admit that "due notice was given the entrymen and owners of said lands by the construction company that it was prepared to deliver water for the irrigation of said lands on and after the 12th day of April, 1911"; but the contention of the appellants is that the notice was ineffectual for any purpose for the reason that the construction company never has been able to deliver to them 2¾ acre feet of water, for which reason they are not obligated to pay any interest. By their pleadings the defendants to the suit did not question the sufficiency or propriety of the statutory notice, which was, on the contrary, recognized by them in obtaining patents for their lands, and in demanding and receiving water from the company for the irrigation thereof during a long series of years.

It is undisputed that, because of the unfortunate mistake that has already been alluded to, the contracts called for a far greater supply of water than was really available—the trial court having found, after a most careful consideration of the evidence and of all of the facts and circumstances of the case, that the amount of water received by the appellants is approximately only 76 per cent. of the amount contracted for, being the same proportionate quantity received by all other irrigators under the system, the purchase price of which should bear interest during the time the appellants received and used the water at the rate of interest specified in the contracts. That is, we think, in accordance with the decision of this court in the Martens Case, supra, and as near absolute equity as the facts and circumstances of the case admit of.

The decree is affirmed.