**SALLEE et al. v. COMMONWEALTH TRUST CO. OF PITTSBURGH et al.**

(Circuit Court of Appeals, Ninth Circuit. October 12, 1925. Rehearing Denied November 16, 1925.)

No. 4514.

1. **Waters and water courses ⟷222—Under facts held no absence of necessary parties in suit to foreclose Carey Land Act liens.**

Under facts in suit to foreclose Carey Land Act (Comp. St. § 4685) liens for water rights in the Salmon river project, *held* there was no absence of indispensable parties, though there had been a reduction of the project, by state and federal authorities, plaintiffs by the pleadings accepting such action and showing that, prior to decree, defendants acquired the shares from the excluded lands and deposited in court a certain amount thereof for each irrigable acre owned by them, so that, without regard to claims of other settlers, each defendant has the same proportionate share and interest in the project that he would have had had there never been contracts outstanding for more than the number of irrigable acres to which the project was reduced, and any rights of others not being injuriously affected by the decree determining the rights as between the parties before the court.

2. **Waters and water courses ⟷222—State statute limiting use of water read into Carey Act contract.**

Recovery may be had in suit to foreclose Carey Land Act (Comp. St. § 4685) liens for water rights in Salmon river project, though amount of water furnished is not that contracted for, as C. S. Idaho, §§ 5640, 7033, limiting use of water to what good husbandry requires, are to be read into the contract.

3. **Waters and water courses ⟷222—Recovery in Carey Act lien case to bear interest from time water was used.**

Interest on recovery in suit to foreclose Carey Land Act (Comp. St. § 4685) lien for water rights in Salmon river project is to commence from time defendants received and used water, though it was not the full amount contracted for, and only from such time, though a negligible quantity had been furnished earlier.

4. **Waters and water courses ⟷222—Landowner entitled to reimbursement for improvements, where water furnished under Carey Act project was sufficient for only part of land.**

Where the water furnished under Carey Land Act (Comp. St. § 4685) project was sufficient for only three-fourths of land for which water rights were sold, landowner was entitled by way of set-off to reimbursement for losses, treating improvements placed on the remaining quarter as useless, though the state board of commissioners had determined the area for which water rights should be sold; it having been provided by contract that water rights should not be sold in excess of the appropriation of water.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Frank S. Dietrich, Judge.

Suit by the Commonwealth Trust Company of Pittsburgh and others against Charles Sallee and others. From the decree, defendants appeal, and plaintiffs bring cross-appeal. Affirmed.

This and other cases consolidated with this for hearing on appeal were brought to foreclose Carey Land Act liens held by the plaintiffs against land in the Salmon River Carey Act project in the state of Idaho. Act of Congress Aug. 18, 1894, Comp. St. 4685, and amendments thereto. Defendants are the owners of the lands subject to the liens held by plaintiffs. The appeal is from a decree awarding relief to the trust company, appellee herein, and by cross-appeal the trust company seeks review of the decree against it.

It is unnecessary to repeat at length the history and legislation affecting the Salmon river project, further than to refer to the cases which have been before this court. Twin Falls Salmon River Land & Water Co. v. Caldwell, 242 F. 177, 155 C. C. A. 17; Twin Falls Salmon River Land & Water Co. v. Davis, 267 F. 382; Twin Falls Salmon River Land & Water Co. v. Caldwell, 272 F. 356; Commonwealth Trust Co. v. Smith, 273 F. 1; Glavin v. Commonwealth Trust Co., 295 F. 103. The following résumé will now suffice.

A large acreage, more than 127,000 acres, was segregated from the public domain under the Carey Act on application by the state of Idaho in August, 1907. On April 30, 1908, the state board of land commissioners for the state made a contract with the Twin Falls Salmon River Land & Water Company, called the construction company, to construct necessary works to apply the available water to the land segregated and other lands estimated as about 150,000 acres. The contract fixed the cost of water rights per acre at $40 per share, and provided that in no case should water rights or shares be dedicated to any lands mentioned or sold beyond the carrying capacity of the canal or in excess of the proportion of water therefor. The construction company made contracts with settlers for the sale of water rights for upwards of 73,000 acres. The typical contract between the construction company and the entrymen and owners entitled the owner to receive one-hundredth of a cubic foot of water per acre per second of time for the land in accordance with the terms of the contract between the state of Idaho and the

Twin Falls Salmon River Land & Water Company, and also to a proportionate interest in the dam, water, and other rights and franchises of the company, based upon the number of shares finally sold in accordance with the contract with the state. The consideration for the water rights agreed to be conveyed was $1,600. A balance due after the cash payment was payable in annual installments, from 1911 up to and including 1921, interest from April 1, 1910, at 6 per cent. payable annually, but, if not paid within 30 days from the due date, the interest was to be computed for the entire period at the rate of 8 per cent. per annum. All interest accruing prior to the date on which notice was given to the entrymen that the company was prepared to furnish water under the terms of the contract was expressly waived.

The contract was made pursuant and subject to the contract between the company and the state. In the state contract, the company agreed to sell to persons filing upon any of the lands described and certain other owners, by contract of sale with right of possession and enjoyment by the purchaser pending its fulfillment, a water right or share in the canal for each and every acre filed upon or purchased from the state or acquired from the United States. Each share or water right was to represent a carrying capacity in the canal sufficient to deliver water at the rate of one-hundredth of one cubic foot of water per acre per second of time, and each share was to represent a proportionate interest in the canal and works and all rights therein based upon the number of shares finally sold in the canal. The company further agreed with the state to sell water rights to persons filing at a price not exceeding $40 per share to be paid as described in the contract, deferred payments to bear interest at 6 per cent. per annum payable annually. The agreement was not to be construed to prevent the sale of shares or water rights on terms more favorable than the contract provided, but in no case should the water rights or shares be dedicated to any lands "before mentioned or sold beyond the carrying capacity of the canal or in excess of the appropriation of water therefor." On January 13, 1921, patents were issued by the United States to the state. Prior thereto, April 12, 1911, there were outstanding water contracts for about 73,000 acres, but contracts for 13,000 of these acres were canceled. October 8, 1917, the state land board cut the project down to 35,000 net irrigable acres. On April 12, 1911, the con-

struction company advertised that it was ready to deliver water under "a system of rotation" to any one who had entered lands under the Carey Act, as described in the notice. Included in the lands described are those involved in this suit. On the same day the construction company also published notice that it anticipated there would be 30,-000 acre feet of water available, and would furnish three irrigations of 10,000 feet each to the tract, unless subsequent experience determined that such a plan should be modified.

Upon hearing evidence, the court held that, not being able to furnish water for the whole tract, recovery could be had for the acreage watered at the contract rate, subject to deductions for incidental losses to defendants due to the failure of the company to deliver the full quantity of water, and fixed the duty of water at $2^1/3$ acre feet, and made a decree awarding the plaintiffs recovery of 76 per cent. of the principal amount of the contract price, less certain deductions. It was assumed that all water appurtenant to the project would be equally distributed over the patented area of 35,000 irrigable acres, and that defendants would realize 76 per cent. of the $2^1/3$ acre feet per irrigable acre in the future. By way of a set-off, $14 per acre for 24 per cent. of the area covered by the contracts was deducted because of improvements made by the defendants. Defendants were allowed interest at 8 per cent. on such set-offs from the date interest commenced on the principal due plaintiffs under their contracts.

Turner K. Hackman, of Twin Falls, Idaho, for appellants and cross-appellees.

Oliver O. Haga, McKeen F. Morrow, and J. D. Eberle, all of Boise, Idaho, for appellees and cross-appellants.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] Appellants argue that the case should have been dismissed for lack of indispensable parties, because, when the cause was submitted there remained lands for which water rights were outstanding for which settlements had not been made, and that the other settlers must be brought in as indispensable to adjudication of the various claims. Plaintiffs cite Commonwealth Trust Co. v. Smith, 266 U. S. 152, 45 S. Ct. 26, 69 L. Ed. 219, affirming our decision in 273 F. 1, but we think there is a clear distinction between this and the Smith Case. In the pleading herein the plaintiffs accept

the action of the state land board and the Secretary of the Interior, whereby there was a reduction of the project to 35,000 acres of irrigable lands, and have shown that, prior to the entry of the decrees appealed from, appellants acquired the stock from the excluded lands and have deposited with the clerk of the District Court shares representing 1⁵/₇ shares for each irrigable acre in the respective tracts owned or claimed to be owned by appellants. Thus, without regard to the claims of other settlers, each of the appellants has the same proportionate share and interest in the water rights of the project as he would have had if there never had been contracts outstanding for more than 35,000 irrigable acres. In the Smith Case the complaint was construed as disregarding the stipulations fixing the price of the water right at $40 per acre, on the theory that the lien claimed was to be determined by distributing the total actual outlay for the works with interest, over all of the reclaimed lands on the acreage basis. Upon that theory the allegations of the complaint were considered as involving the determination of the total outlay and of the total area reclaimed, and, in view of the comprehensiveness of those questions, the Supreme Court said (266 U. S. 161, 45 S. Ct. 29):

"Every contract holder has an interest in them and will be affected by their determination, however made. It is of concern to him, not merely whether his tract is held to have been reclaimed and to be chargeable with part of the general outlay, but also whether and to what extent other lands are in the same situation. In this and other respects what is determined in respect of other holders is of direct concern to him. In short, the interests of the contract holders are so related that an effective and just determination of the questions can only be had in a proceeding to which all are parties."

No such allegations are found in the present complaint, and the decree herein, as between the parties before the court, has determined their rights without injuriously affecting the rights of others not before the court. Waterman v. Canal Bank, 215 U. S. 33, 48, 30 S. Ct. 10, 54 L. Ed. 80.

[2] Defendants next urge that the contract was for a specific quantity of water, and that no recovery by plaintiffs should be based upon the duty of water, and that evidence respecting the duty of water was erroneously received and considered. That question is no longer an open one, for in Twin Falls Salmon River Land & Water Co. v. Caldwell, 242 F. 177, 155 C. C. A. 17, Id.,

272 F. 356, it was held that the settlers were entitled under their contracts to one-hundredth of a cubic foot per second per acre, provided such quantity could be beneficially applied, but were not entitled as a contractual right to 2¾ acre feet per second, as that amount was merely determined in an advance estimate made by the proposer of the plan as to the capacity of the system. In Idaho Irrigation Co. v. Gooding, 265 U. S. 518, 44 S. Ct. 618, 68 L. Ed. 1157, it was held that the provisions of the Idaho statutes (sections 5640 and 7033, St. 1919) must be read into the contract, and that the settlers are not entitled to a specific quantity of water equal to the contract rate of flow through the irrigation season, unless it is shown that such quantity is not in excess of the reasonable duty of water, giving due consideration to the character of the area and the limited quantity of water available for reclamation. In State v. Twin Falls, etc., Co., 30 Idaho, 41, 166 P. 220, the Supreme Court of Idaho laid down the same rule. The later state cases Tapper v. Idaho Irrigation Co., 36 Idaho, 78, 210 P. 591, modified on rehearing, Boley v. Twin Falls Canal Co., 37 Idaho, 318, 217 P. 258, State v. Twin Falls, etc., Co., 37 Idaho, 73, 217 P. 252, are not in conflict with the Rayl Case (State v. Twin Falls, etc., Co.), supra, for in none of them does it appear that the court was called upon to decide claims by settlers for more water than could be used for beneficial purposes.

[3] Appellants insist that no interest should be allowed to the plaintiffs upon recovery except from the date of the entry of the decree of foreclosure, and under no circumstances from a time prior to the date patent was issued by the United States to the state, or January 13, 1921. Again is the appellant confronted with a pertinent adjudication, for in Glavin v. Commonwealth Trust Co. (C. C. A.) 295 F. 103, appellants therein made much the same argument as have the appellants herein, but we held that the purchase price of the amount of water received, though only 76 per cent. of the amount contracted for, being the same proportionate quantity received by all other irrigators under the system, should bear interest during the time the appellants received and used the water at the rate specified in the contracts. See Twin Falls Oakley Land & Water Co. v. Martens (C. C. A.) 271 F. 428, certiorari denied 257 U. S. 637, 42 S. Ct. 49, 66 L. Ed. 410.

With respect to the period for which interest should be computed, the District Court found that, on April 12, 1911, the construc-

tion Company gave notice that it was prepared to deliver water under a system of rotation to all entered lands upon the project, aggregating 70,000 acres. Section 3014, Idaho St. The settlers' contract with the construction company provides that interest shall commence to run upon deferred payments on April 1, 1910. All interest accruing prior to the date upon which notice is given to the entryman that the company was prepared to furnish water under the contracts was expressly waived. With respect to the notice, inasmuch as the agreements with the settlers called for an ample supply of water for the entire irrigation season, no really effective notice could be given until the company was prepared to furnish water for the entire irrigation season and the full quantity required by the settlers' contracts. It is plain that preparation to furnish water to some settlers, but not to others, was not compliance with the statutes. Nor was preparation to furnish by a "system of rotation," not by continuous flow, using a supply insufficient to meet contract requirements in accord with the scheme of the legislation authorizing the Carey Act projects. The notice published by plaintiff on April 12, 1911, which was after April 1st, the agreed date of the beginning of the irrigating season, was presumably published with a view of fixing the beginning of the statutory period in which the settler was called upon to cultivate his land and make final proof thereon, and also to start the date of the running of the interest. But as a fact the company, not being prepared to furnish water for the full irrigating season under the terms of the contract with the state, was not in a position to give the notice required. Evidence that the company appreciated the position is furnished by a qualifying notice to settlers, published the same day, advising them that it was anticipated that water would be at or above the tunnel on April 12th, and that it was anticipated that there would be 30,000 acre feet of water available for use that season, and that the purpose was to give three irrigations of 10,000 acre feet each to the tract, unless subsequent experience should determine that that plan should be modified. Judge Dietrich, in his opinion, has shown that, upon its own estimate, the company would be able to deliver less than one-half acre foot for each acre of area for which there were outstanding contracts, and that such quantity would be far from enough to justify cultivation of the lands for any purpose. Surely it would not be equitable to oblige settlers to pay interest before the water was ready to be used, and, although there may have been some water furnished in 1911, it was of such minor account that the court was not in error in declining to regard it. For the time after 1911 interest was properly allowed upon the purchase price of the quantity of water actually available.

[4] In allowing set-offs, the court proceeded upon this rule: Having found that the water supply was only 76 per cent. adequate for the area patented, the settler with a contract for 40 acres could get but approximately three-fourths of water needed in any season, and therefore might either partially irrigate the whole tract and get only part of a crop, or might apply all the water to three-fourths of his holdings and raise a full crop on 30 acres, raising nothing on the remaining 10 acres. Guided by experiences gained by evidence in other suits involving similar situations, the court concluded that, by allocating all the available water to three-fourths of the land, the equities could be adjusted more fairly than by following any other method. The plan as applied counted the improvements which the settler had put upon the 10 acres which received no water as useless, and obligated the plaintiff, to whose advantage the plan would result, to reimburse the settler for losses by reason of the failure of the plaintiff to furnish the water. Such an adjustment is at best imperfect, but, considering the conditions, we believe the results will be as efficient as can be in protecting the rights of the parties.

Cross-appellants contend that, when the state board of land commissioners determined the area, 35,000 acres, for which water rights should be sold, there was no basis for jurisdiction in the courts to make determination of that question. But the courts are not deprived of right to construe the limitations contained within the contract between the settlers and the construction company, or between the company and the state. For instance, no act of the board in reducing the amount of acreage could destroy the general provision in the contract that in no case should the water rights or shares be dedicated to any lands mentioned or sold beyond the carrying capacity of the canal, or in excess of the appropriation therefor; nor could the board, by reduction of the area to 35,000 acres, definitely fix the right of the construction company to collect the full amount of the purchase price on the contracts, regardless of the quantity of water actually furnished. In Idaho Irrigation Co. v. Gooding, 265 U. S. 518, 44 S. Ct. 618, 68 L. Ed.

1157, the Supreme Court in referring to similar contracts with settlers, upheld the power of the District Court in allowing much less than the quantity of water stipulated in the contract, upon the ground that the Idaho statute requires that the amount of water allowed shall never be in excess of what is used for beneficial purposes, and the statute which forbids the use by an owner of more water than good husbandry requires. Sections 5636, 5640, and 7033, Comp. St. Idaho.

In affirming the decree, we are fully sensible of the difficulties which have confronted the court in reaching equitable and practicable solutions of the questions involved, not alone in this but in other litigation already referred to, which has arisen over rights of construction companies' lienholders and settlers who have had to do with the Salmon river project. But it seems to us that the decree herein affords as full a measure of protection of the rights of all concerned as could be made.

Affirmed; costs to be taxed in favor of appellee, and without costs on the cross-appeal.